[Civil No. 3926. Filed March 21, 1938.]

[77 Pac. (2d) 447.]

M. KARAM & SONS MERCANTILE COMPANY, a Corporation, Appellant, v. F. P. SERRANO and N. S. KLINK and KATHERINE, Also Known as KATY KLINK, Husband and Wife, Appellees.

398

Mr. Henderson Stockton, Mr. Emmett R. Feighner and Mr. Eli Gorodezky, for Appellant.

Mr. Greg Garcia, for Appellees.

ROSS, J.—This is an action by M. Karam & Sons Mercantile Company, a corporation, lessor, against its tenant, F. P. Serrano, and N. S. Klink, sublessee, and Katherine Klink, his wife, to recover possession of leased premises, on the ground that they have breached a certain provision or provisions of the lease. The record discloses no reason for making Katherine Klink a party except that she is the wife of N. S. Klink. The case was tried to a jury, and the jury, after hearing the evidence and the court's instructions, rendered its verdict in favor of the defendants. Judgment was duly entered thereon, and the plaintiff has appealed.

The premises involved is a storeroom at 44 East Washington Street, on the ground floor of the building on lots 2 and 4, block 21, Phoenix, known as the Berryhill building, such room being 13x90 feet and facing on East Washington Street.

On January 27, 1934, the plaintiff leased said room 44 to one B. O. Sykes for the conducting therein of the business of an "exclusive shoe store" only, for a period of five years from and including February 15, 1934, to and including February 14, 1939, at a monthly rental of $250 up to and including the 15th day of January, 1936, and $300 per month for the rest of the term.

Sykes, on October 16, 1934, assigned his leasehold to defendant F. P. Serrano, who took such leasehold with

all its burdens and benefits. The lessor gave its consent to this assignment verbally, and not in writing as the lease provides. Thereafter Serrano paid the rent to plaintiff and was recognized by it as its lawful tenant.

The conditions of the lease pertinent to the questions to be decided are:

"And the said Lessee further agrees not to let or underlet the whole or part of said leased premises or to assign this lease or any interest therein without the written consent of the said Lessor first had and obtained therefor, and any attempt by the said Lessee to assign this lease or any interest therein in whole or in part, or to let or underlet said premises in whole or in part, shall at the option of the Lessor immediately terminate this lease and the Lessor shall be entitled to the immediate possession of said leased premises thereupon and all rents paid by said Lessee in advance on account of said premises shall be forfeited to said Lessor for damages due to it for such attempt to violate the conditions of this lease.

"It is further agreed between said Lessor and said Lessee that no consent by said Lessor to any assignment of this lease or any interest therein, or the subletting of said premises hereby leased, shall be held to waive the covenant not to assign this lease or any interest therein or to sublet the said premises without the written consent of the Lessor as to any further assignment or subletting."

"It is further agreed between said Lessor and said Lessee that in case the Lessee . . . fails, neglects or refuses to keep, observe or perform all or any of the covenants and agreements herein contained to be kept, observed, or performed on his part, then and in that event or in any of them the said Lessor may at its election terminate this lease by giving five days written notice of its intention to do so to said Lessee when and whereupon all further rights of said Lessee hereunder or in any extension of this lease shall forthwith cease and terminate, and said Lessor shall then be entitled to retake immediate possession of said prem-

ises and every part thereof, using all necessary means in its judgment so to do.''

''Lessee agrees to use the said premises for the purpose of conducting therein the following and only the following business: Exclusive Shoe Store.''

The breach of the lease alleged in the complaint is as follows:

''That as the plaintiff is informed and believes, and upon such information and belief, alleges that in the month of March, 1937, and on or about the 10th day thereof, the said defendant F. P. Serrano, assigned the said lease, or made a sublease of the East Half of the said premises to the defendants N. S. Klink and Katherine, also known as Katy Klink, his wife, and allowed the said East Half to be used for display and sale of dresses and ladies wear.''

It is alleged that the said lease of the east half to Klink has not been consented to either in writing or otherwise; that plaintiff has not consented to the use of the east half for display and sale of dresses and ladies' wear; and that Klink's occupancy thereof is in violation of plaintiff's rights.

The following paragraph from defendants' answer states the grounds of their defense:

''Defendants further allege that the said original lease does provide that the said premises shall only be used for an exclusive shoe store but that the plaintiff has by oral and written agreement and by its actions herein waived the said provisions in the said lease and that the said plaintiff well knew that the said premises were being used by the said defendants for a shoe store and a ladies-to-wear store and knowing that the said premises were so used since 1935 have always accepted the rent specified in the said written lease from the defendants and that the only reason plaintiff wants to eject defendants from the said premises is because the said plaintiff has had an offer of renting said premises for more money than

the defendants are now paying the said plaintiff for the occupancy of the same. . . . "

We feel that a detailed statement of the evidence bearing on the main issues will be helpful to an understanding of the problem to be decided.

On about November 18, 1935, defendant Klink moved into said room 44, under a sublease from Serrano, with a stock of ladies' ready-to-wear, and displayed it on the west side thereof. Serrano with his stock of shoes occupied the east side. In other words, they adjusted the space so that each, generally speaking, occupied approximately 6½ feet of the floor space the length of the room, or 595 square feet each. There was one front door, so that they used the same opening for ingress and egress. There was no partition between them. The customer of either line of goods could patronize the other without leaving the room and by going a step or two. It was practically one store with two lines of goods, to wit, shoes and ladies' ready-to-wear, and much of the space was necessarily in the common use of both occupants.

The agreement between Serrano and Klink, executed in pursuance of the lessor's written consent to underlet of November 13, 1935, took the form of a lease from Serrano to Klink for the rest of the term of the lease, at a monthly rental of $160. The property sublet to Klink and the uses to which it was to be devoted are as follows:

"The west half of the store situated at 44 E. Washington St., Phoenix, Arizona. Said space shall include the west half of the main floor and the mezzanine, the west show window, and one of the two show-cases in the entrance of the store. The party of the first part also agrees to furnish all electricity and janitor service required, to remove the west row of shoe store chairs, and to allow party of the second part to alter present shelves for garment racks.

"The party of the second part shall use said half of the store for the conduct of a ladies-to-wear business."

This arrangement of conducting the two businesses was followed by Serrano and Klink for about fourteen months, or until January, 1937, and each month during such time plaintiff's secretary-treasurer called at room 44 and collected the rent from Serrano and made no word of complaint.

Defendants contend that Klink's occupancy of a portion of said room with ladies ready-to-wear was consented to by the lessor orally and in writing, and to substantiate such claim they offered in evidence the writing below, which was admitted:

"Consent to Underlet.

"The undersigned, M. Karam & Sons Mercantile Company, an Arizona corporation, being the Lessor named in that certain Indenture of Lease entered into on the 27th day of January, 1934, between itself of the one part and B. O. Sykes, of Phoenix, Arizona, of the other part, and covering the premises known and numbered as 44 East Washington Street, in the City of Phoenix, County of Maricopa, Arizona, which lease was subsequently assigned by the said B. O. Sykes to F. P. Serrano, does hereby consent that the said F. P. Serrano may underlease a portion of the premises comprised in said lease, namely, one-half (½) thereof, unto N. Klink, of Phoenix, Arizona, for the whole remaining term of said lease on the express condition however that the said F. P. Serrano and B. O. Sykes shall remain and be, jointly and severally, liable to the said M. Karam & Sons Mercantile Company for the prompt payment of the rent and performance of the covenants on the part of the Lessee as in said lease are mentioned, and provided that this consent shall not authorize any further underletting or parting, wholly or partially, with the possession of the said premises or any part thereof or prejudice or affect any of the covenants, conditions or provi-

sions in the said lease contained, except to the extent hereinbefore expressed.

"Signed this 13th day of November, 1935.
 "M. KARAM & SONS MERCANTILE COMPANY
 "By —————————————,
 "Secretary.
"The above is hereby accepted:
 "[Signed] F. P. SERRANO."

The evidence with reference to this instrument, of which the above is a carbon copy, is as follows: It was composed and written by S. N. Karam, attorney at law, who is a director of the lessor, also the secretary-treasurer and locally represented the lessor in this lease matter. He testified that after he wrote the paper he gave the original to Klink and kept a copy and that it was never executed by the lessor. Klink testified that he and Serrano went to S. N. Karam's office, in Phoenix, on or about November 15, 1935, and that, after Karam read the paper to them, he (Karam) and Serrano signed at least two copies of it; that Serrano took away with him one copy and the other copy must have been left on Karam's desk.

Serrano testified that he and Klink went to Karam's office together; that Karam read the paper to them; and that he signed two copies, put one in his pocket, and walked out.

S. N. Karam admitted in his testimony that the lessor had given oral consent to Klink's taking the lease to one-half of room 44 for a ladies' ready-to-wear store but that such consent was limited to the west half. In other words, he would modify and change the written consent to Klink's occupying an indefinite one-half of the room to a definite portion, to wit, the west half.

At all events, everything was satisfactory to the lessor. It accepted the rent from month to month from Serrano until the payment of March 14, 1937,

fell due. This payment it refused to accept. It appears that in November or December, 1936, Serrano, because his shoe business was not prospering, wanted to assign his entire leasehold to Klink, and Klink was willing to accept the assignment. Serrano testified that he spoke to S. N. Karam about it and he said it was all right with him, but he would want more money. Klink testified that in October or November of 1936, he saw S. N. Karam about renting the whole store, and, after considerable dickering, he offered $350 a month for the first year and $375 for the second year, or until the expiration of the lease, and Karam said, "I think that will be all right." That about the first of the year 1937 he saw S. N. Karam and said to him, "This affair of Serrano is dragging, but the minute he gets through with his stock, I am ready to take the lease. He said 'All right.' "

On January 9, 1937, Serrano made a bulk sale of his stock of shoes and moved out of room 44, which left Klink, with ladies' ready-to-wear, the sole occupant. Klink immediately displayed some of his stock in the east show window and otherwise rearranged his goods in the room.

On January 11, 1937, Serrano and Klink went to Karam's office to have the lease changed or made to Klink, and Klink testified, "We were told that conditions have changed." He said, "We have had two or three offers since then . . . There was nothing in writing."

Serrano testified that Karam said, "We have changed our minds." Karam then advised defendants that they could not put anything but shoes in the east part of the room. Thereupon the defendants bought a small stock of shoes jointly and reopened a shoe store in the room—they testified, as partners in the shoe business.

On January 15, 1937, Ralph Gaxiola, who was employed in the store in room 44 during 1935 and 1936

by Serrano and Klink, took to S. N. Karam a check to pay rent for the month ending February 15, 1937, which was accepted, and while there, according to his statement, Karam showed him three letters offering more money, that is, from $400 to $450 per month, and stated that one of the persons who wanted to rent the room, a Mrs. Cohen, offered to spend $2,500 for a new front.

We refer to the parties as they were below.

It will be an aid in arriving at the rights of the parties hereto if we keep in mind the exact question in controversy as made by the pleadings. The plaintiff charges in substance that Serrano, on or about March 10, 1937, sublet the east half of the demised premises to Klink and wife "to be used for display and sale of dresses and ladies wear" in violation of the terms of the lease. Defendants admit the act charged and say they did it with the oral and written consent of the plaintiff; also that plaintiff had waived the provision in lease against using premises for exclusive shoe store only and had consented to Klink's using the said premises for a ladies' ready-to-wear store; that it had been so used by Klink since 1935 with the knowledge of the plaintiff; and that the plaintiff had, from month to month, accepted the rent from Serrano.

The lease involved is evidently one drawn by the lessor. It imposes almost every kind of restriction imaginable upon the lessee. However, that is one of the privileges of the lessor. He has the right to dictate the terms upon which he will lease his property and the lessee who accepts a lease is bound by its terms, as much so as the lessor. If he violates any of the covenants of the lease, and it is provided that such a violation shall cause a forfeiture of his lease, the courts will enforce such forfeiture. If the lease forbids the lessee to assign except with the written consent of the lessor, and the lessee does assign with-

out such consent, it effects, at the option of the lessor, a forfeiture. In this case the assignment of the lease from Sykes to Serrano was not made with the written consent of the lessor, as the instrument provides it should be, but the lessor, as it had the right to do, waived the departure from the written agreement and recognized Serrano as its tenant. Likewise, as we shall see, the lessor waived that written stipulation of the lease providing that the premises could be used by Serrano for a shoe store only and consented that Klink could use a portion of it for a ladies' ready-to-wear store.

■ ■ The question to be decided revolves around the meaning to be given to the lessor's consent to allow Serrano to sublet a portion of the premises to Klink, dated November 13, 1935, and headed "Consent to Underlet." We think the meaning of such instrument, it being quite plain and unambiguous, is largely a question of law for the court. It will be borne in mind that covenants not to assign or sublet are not favored by the law and are strictly construed against the lessor. 35 C. J. 978, § 61. 16 Ruling Case Law, 832, section 328, states the rule as follows:

"Restrictions against assignments, being a restraint against alienation, are not looked upon with favor by the courts, and from the earliest times have been construed by courts of law with the utmost jealousy to prevent the restraint from going beyond the express stipulation. A provision to operate as a restriction on the right to assign must be clearly expressed. This attitude of disfavor, however, does not permit resort to sophistical reasoning to read out of such a covenant that which it really contains. It simply requires that what is claimed to be within it shall be clearly and manifestly so, and that, if there is felt a doubt as to its being within it, it shall be excluded therefrom."

■ ■ The plaintiff at the close of the whole case made a motion for a directed verdict on the ground

that the uncontradicted evidence shows defendants violated the express terms of the lease, in that defendants used, or permitted to be used, the east half of the demised premises, or a part thereof, for conducting a ladies to wear business without the consent and over the objection of plaintiff. Such ruling is assigned as error. We have stated the evidence bearing upon the principal points involved, indicating as we went along wherein it conflicted. It was for the jury to reconcile the conflicts in the evidence and, since the verdict was for defendants, any controverted questions of fact necessary to sustain the verdict, we shall assume, were resolved by the jury in favor of defendants. This rule is one that has long been observed and followed by this court, and we see no reason why it should not be applied to the facts here present.

If it is, then the instrument dated November 13, 1935, giving the plaintiff's consent to Serrano to sublet "a portion of the premises . . . namely, one-half (½) thereof, unto N. Klink," for the rest of the term, was executed and delivered to Serrano, and in its four corners is to be found the extent of plaintiff's consent. This instrument was prepared by plaintiff. Presumably it expresses the terms of the agreement previously entered into between the plaintiff and defendant Serrano. No suggestion of any mistake or fraud in its procurement is made. No question as to its meaning can reasonably be made. It is not ambiguous. Plaintiff denies only its execution.

Plaintiff's consent is that Serrano may lease one-half of room 44 to Klink for the rest of the term. It does not specify what half. Under it Serrano could lease to Klink any part of room 44, just so it was one-half. He could lease to him the east half or the west half or the south half or the north half. The space might be a triangle, a square, or a parallelogram. It was no concern of plaintiff's what half Serrano as-

signed to Klink. If it had been, the consent agreement would have been specific; it would have named the west half or the east half, for instance. This cannot be disputed or contradicted.

Nor do we think that because Serrano, in pursuance of the consent given, underlet to Klink the west half, front show window and mezzanine, his right of occupancy as between him and plaintiff was reduced to the east half. As against plaintiff, Serrano's right of possession to the whole room was absolute. As between him and Klink, he was the lessor and Klink the lessee. If at any time Klink should quit business and move out of the premises, his leasehold would automatically revert to Serrano and not to plaintiff, and Serrano would be entitled to use the whole space for a shoe store, or he could again sublet one-half to Klink. For as long a time as he and Klink could get along with each other, Klink may under the consent agreement be Serrano's tenant. Plaintiff is not interested in any arrangement Serrano and Klink may make as to their joint occupancy of the premises, except perhaps, if plaintiff should want to be extremely technical, it could object to Klink's occupying more space than one-half.

We must therefore conclude that under the consent agreement Serrano could underlet to Klink any one-half of said room 44, and that the leasing of the west half did not exhaust Serrano's right to change space occupied by Klink to other parts of the room. He could under the consent sublet to Klink as many times as he and Klink should desire to change the terms of the lease and plaintiff could not complain because it would not be hurt and no covenant of the lease would be violated.

The plaintiff in its argument in support of this assignment assumes that its consent to allow Serrano to underlet a portion of the premises to Klink

was an oral consent and limited to a subletting of the west half. If plaintiff's premise was predicated upon the facts, his reasoning and conclusions would be well founded. We think, however, the plaintiff's premise is wrong and therefore his conclusion is wrong. Serrano did not violate his covenant under the lease not to sublet any part of the premises without the written consent of the lessor when he permitted Klink, in January, 1937, to occupy the east half of the premises with a stock of ladies' ready-to-wear. It will be noticed that the ''Consent to Underlet'' was that Serrano might sublet half of the premises to Klink and there is no restriction on the use Klink should make of such space. Under such consent, that is, a general consent, the rule, we think, should be as follows:

''Where a lease is general in its provisions and terms, and expresses nothing as to the mode in which the lessee is to use or occupy the premises, he is clothed with full power and right to occupy and use the land demised for any lawful purpose not injurious to the reversion; he has the right to carry on upon the demised premises any lawful business he chooses which is not prohibited by the lease and which is not injurious to the premises.'' 16 R. C. L. 729, § 220.

Plaintiff and defendant, however, are in agreement that Klink was to use his space in premises for ladies' ready-to-wear.

Plaintiff's second assignment asserts that the court committed error in overruling its motion for a directed verdict on the ground that the evidence shows Serrano had sublet an interest in premises, or a part thereof, without plaintiff's consent, to N. S. Klink, or to a partnership consisting of F. P. Serrano and N. S. Klink, and that Klink had assigned, or attempted to assign, an interest in, or to sublet a part of, the west half of said premises to said partnership without such consent. We do not analyze the evidence to see

whether or not this assignment is well founded in fact. Possibly the consent to allow Serrano to lease an undivided one-half of the premises to Klink would not authorize Serrano to sublet such one-half to Serrano and Klink a partnership. Plaintiff does not, however, in its complaint allege any such breach. The only issue made by the complaint is whether the occupancy and use of the east half of the premises by Klink and his wife "for display and sale of dresses and ladies wear" breached the lease contract. The motion for a directed verdict was properly overruled.

The third, fourth, and fifth assignments are upon the same grounds as the first and second, differing only in the forms of presentation.

██ ██ Assignments 6, 7, and 8 are directed at the instructions to the jury. The first one reads:

"You are instructed, gentlemen of the jury, that a party to a contract of lease may waive the written stipulations or covenants contained therein by an agreement in writing, by verbal agreement or by acceptance of rent for the leased premises knowing that certain parts of the contract have been violated."

It is said this instruction is bad because it ignores the stipulation of the lease to the effect that a waiver of a violation of a covenant should not be construed as a waiver of any other or subsequent violation of the conditions and terms of the lease. We think the instruction, as a general proposition, is not incorrect. If plaintiff desired an instruction incorporating its views, it should have asked for it.

██ The next instruction reads:

"You are therefore instructed that if the plaintiff corporation in this case during the year 1936 and part of 1937 accepted the monthly rent on the leased premises herein knowing that a portion of the east half of said premises were used by the defendant N. Klink, if you find by a preponderance of the evidence that he did occupy the same, then I charge you

that the plaintiff has waived its right to forfeit the said lease because of that violation on the part of the defendants.''

And plaintiff says the court erred in so instructing the jury,

''for the reason said instruction is not applicable to the facts of this case in that covenants in a lease as to the use of the demised premises are continuous covenants subject to recurring breaches, and a consent or waiver of one breach is not a waiver of a subsequent breach, there being no evidence in the record showing any consent to or waiver of the breach of the covenant as to the use of the east half of the demised premises on and after March 13, 1937, when it is admitted by appellee Klink that he occupied and used a part of the east half of said demised premises for his ladies-to-wear business over the objection and withoue the consent of appellant.''

This instruction may not be strictly accurate under the facts, but, as we have seen, the occupancy of the east half by Klink with a stock of ladies' ready-to-wear was not a breach of any covenant of the lease, but was in pursuance of the plaintiff's written consent.

 The next instruction reads:

''I charge you, gentlemen of the jury, that the plaintiff contends that in November, 1935, it permitted the defendant F. P. Serrano to sublet the west half of said premises to N. Klink, by oral agreement, and that the defendants violated the terms of said lease and sublet the east half of said premises described in said lease to said N. Klink; I further charge you that the defendants contend that on the 13th day of November, 1936 (1935), by oral and written agreement the plaintiff, through its agents consented to permit the defendant F. P. Serrano to sublet half of said premises to N. Klink. You are, therefore instructed, that if you find from a preponderance of the evidence that the plaintiff did consent, either by oral or written agreement, to permit the said Serrano to sublet half of the said premises to N. Klink without specifying which

half should be sublet, or if you find from a preponderance of the evidence that the said N. Klink did occupy a part of the east half and a part of the west half or a part of the south half of said premises and the plaintiff knowing that N. Klink occupied other portions of said premises aside from the west half, and so knowing accepted the rent from the said Serrano, then I charge you that you must find for the defendants and against the plaintiff.''

This instruction is criticized for various reasons, none of which in our opinion is justified. We think this instruction very aptly and correctly submitted the real issues to the jury and is based upon the evidence.

■■■ During the trial plaintiff moved for a mistrial because defendants' counsel in his argument to the jury made the following statement:

'' . . . because in my opinion and from a reasonable deduction from the evidence, . . . S. N. Karam has got it properly signed in his office and he knew he was sunk if he produced it,''

giving as a reason therefor that such statement was not a reasonable inference from the evidence, was inflammatory and highly prejudicial to the rights of plaintiff, and intended to bias and prejudice the jury. The motion was denied, and this ruling is claimed to be error. The statement complained of, standing alone, means nothing. Counsel, however, explain that it refers to plaintiff's copy of the consent agreement of November 13, 1935. The records show that plaintiff, or its agent or attorney, S. N. Karam, retained a copy of such agreement and such copy was not produced at the trial. The question was whether plaintiff had signed such agreement. Defendants' counsel, we think under such circumstances, had a right to comment on plaintiff's failure to produce its copy of such agreement. If it had been produced with no signatures on it, the natural inference would have

been that it was not signed and executed by plaintiff and Serrano. The reason it was not produced, it might well be argued, was that it had been signed by the parties and, if produced, would be fatal to plaintiff's action.

Assignments 11, 12, and 13 are directed at rulings upon objections of the plaintiff to other arguments and statements made by defendants' counsel to the jury. We are satisfied that there was no error in these rulings.

■ The court permitted defendants to prove the value of Serrano's stock of shoes, when he sold it on January 9, 1937, to be $3,200 to $3,300, and that he obtained for it only $750. This testimony was objected to as immaterial. Granting that such testimony was immaterial, we cannot see under the law and facts wherein it prejudiced the plaintiff.

■ This disposes of all assignments except 9 and 15. In the ninth plaintiff complains because the court refused to give a peremptory instruction in its favor at the close of the case. The court's ruling was right. In the fifteenth plaintiff complains of the court's admission in evidence over its objection of the instrument referred to as "Consent to Underlet" and of the court's refusal to strike such instrument on plaintiff's motion after its admission. There was ample evidence that such instrument was executed by plaintiff and Serrano for the purposes therein stated. It would have been serious error not to have admitted it in evidence.

We have carefully examined all the assignments made by plaintiff and conclude that the trial was a fair one, in accordance with law, and that no prejudicial error was committed.

The judgment is affirmed.

McALISTER, C. J., concurs.

LOCKWOOD, J., dissents.