251 P.2d 887

**THOMAS et ux. v. GIVEN et al.**

No. 5567.

Supreme Court of Arizona.

Dec. 30, 1952.

Krucker, Evans & Kemper, of Tucson, for appellants.

Knapp, Boyle, Bilby & Thompson, of Tucson, for appellees.

DE CONCINI, Justice.

This is an appeal from a judgment of the superior court of Pima county wherein Fred Thomas and Isabell Thomas, the lessors, appellants herein and plaintiffs below, were denied the right to re-enter and obtain possession of premises which they had leased to appellees-defendants.

On or about November 29, 1945, the plaintiffs and defendants entered into an agreement in writing by the terms of which the plaintiffs leased to the defendants the premises located at 92–92½ West Congress Street, Tucson, Arizona. The term of the lease was for a period of 15 years with an option to renew the lease for ten years. The lease provided that the tenants should pay their rent on the 5th day of every month. Defendants entered possession and spent about $31,000 in making improvements. Defendants paid their rent to the plaintiffs every month and were never late in their payment until April of 1951. On April 16, 1951, the rent due the plaintiffs

for the rental period commencing April 5, 1951 had not been received by the plaintiffs, and they instructed their attorneys to give notice to the defendants to vacate the premises. On April 17, 1951, the notice to the defendants was given by the attorneys for the plaintiffs, said notice being mailed to the defendants' place of business in El Paso, Texas. On April 17, 1951, the plaintiffs received an envelope containing the defendants' check in the amount of $276.68 which was the rent due plaintiffs for the month starting April 5th. That same day the plaintiffs instructed their attorneys to return the check to the defendants and again notify them to vacate the premises. Plaintiffs then brought this action pursuant to Section 27–1215, A.C.A.1939, which provides that the landlord has the right to re-enter and be put in possession of the premises when the tenant neglects or refuses to pay his rent for five days after it is due.

The lease provided that no liquor should be sold on the premises. Upon agreement the tenants were to pay an additional $35 per month if any of their subtenants sold liquor. This occurred and defendants paid the extra $35 per month. In March 1951 defendants made a claim to plaintiffs for $420 as overpayment at the rate of $35 per month for 12 previous months when no liquor was sold there by the subtenant. At the time of the trial the defendants waived this overpayment.

In making his order the trial judge said, "but since it appears from the undisputed testimony that the nonpayment was not willful, but inadvertent and through a mistake, I do not believe that the court would be justified under the principles of equity which I think are applicable in this case, to work a forfeiture."

The plaintiffs urge upon this court two assignments of error which may be summarized as follows:

(1) That because of the language contained in Section 27–1215, A.C.A.1939, the plaintiffs are entitled as a matter of law to be put in possession of the premises.

(2) That the rules of equity enunciated by the lower court do not apply where a statute duly passed by the legislature provides for a forfeiture.

We will discuss both assignments together since the first is wholly dependent upon the second.

Section 27–1215, A.C.A.1939, upon which plaintiffs rely, reads in part as follows:

"(a) Whenever a tenant shall neglect or refuse to pay his rent when due and in arrears for five (5) days, or whenever any tenant shall violate any of the provisions of his lease, the landlord or person to whom said rent is due, or his agent, may re-enter and take possession, or, *without any formal de-*

*mand or re-entry, commence an action for the recovery of the possession of said premises."* (Emphasis ours.)

The statute does not work an automatic forfeiture, but does so only when the landlord takes affirmative action as provided therein, either (1) by re-entry, or (2) by commencing an action for the recovery of the premises. The plaintiffs came within the statute by following the latter course. The rent was due the 5th; under the statute five days' grace was allowed but payment was not tendered until the 16th.

The first question raised is, can equity relieve against a statutory forfeiture? The majority rule is that it cannot.

Vol. II, Pomeroy's Equity Jurisprudence, 5th Ed., Symons, p. 311, section 458, provides:

"Finally, whenever any forfeiture is provided for by a statute, to be incurred on the doing or not doing of some specified act, equity can afford no relief from it, and the same is true of a statutory penalty. A court of equity has no power to disregard or set aside the express terms of statutory legislation however much it may interfere with the operation of common law rules."

In Rainey v. Quigley, 180 Or. 554, 178 P.2d 148, 150, 170 A.L.R. 1149, the court in a well-reasoned case traces the history of the problem from the earliest reported case of Peachy v. The Duke of Somerset, 1 St.Rep. 446 (1721), to March 1947 and concludes:

"Courts of equity have long recognized a distinction between forfeitures agreed upon by the parties and those provided by statute. Equity may relieve from the former, but not from the latter."

Two years later the Oregon court, recognizing the rule in Rainey v. Quigley, invoked equity to relieve against a forfeiture in the case of Caine v. Powell, 185 Or. 322, 202 P.2d 931, 934, on the ground of mistake on the part of the tenant. Commenting on the Quigley case, the court said:

" * * * there was no mistake on the part of the plaintiff (tenant), fraud on the part of the defendant (landlord), or any act of hers which would create an estoppel.' "

Thus it is clear, while the general rule is that equity cannot relieve against a statutory forfeiture, it can and will do so on the grounds of fraud, accident or mistake. See also the Oregon case of Loe v. Klein, 191 Or. 654, 233 P.2d 209.

The sole remaining question is: does the evidence support the trial court's conclusion that there was a "mistake" which would relieve against a statutory forfeiture?

The testimony reveals that Mrs. Valdez, an employee of the defendants for 27 years, was the office manager and chief

bookkeeper. It was her job to write all checks. She wrote between 250 and 300 checks on the first of the month, which included ten checks for store rentals occupied by the defendants in various cities. Her custom, prior to April 1st, was to issue and post each check by hand in a ledger as she wrote it. On this occasion, through inadvertence she wrote only nine checks and skipped the check to the plaintiffs. Ordinarily she would have caught her error when she posted the checks but due to a change in the "posting" method from "by hand" to "machine posting", which was commenced in the previous month, she was not aware of her error. The "machine posting" was installed in March but she had permission to keep all her books by "hand posting" until the end of March.

The machine posting was done by two boys employed by the defendants. They were inexperienced and slow, and it was not until they were finished that she discovered by checking through the different items that the check to defendants had not been posted or written. This was discovered on April 16th and she immediately wrote the check and dispatched it by air mail to the plaintiffs. This was the first time since November, 1945, the date of the lease, that plaintiffs' check was not written and sent prior to the 5th of the month.

Under the circumstances we hold the trial judge was correct in concluding the nonpayment was "inadvertent and through mistake", and that under the principles of equity the court should not permit a forfeiture of the lease.

Judgment affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.