432 P.2d 274

Park **BOLON**, Appellant,

v.

Bob **PENNINGTON** and Maude Leota
Pennington, husband and wife,
Appellees.

No. 2 CA–CIV 370.

Court of Appeals of Arizona.

Oct. 10, 1967.

Rehearing Denied Oct. 31, 1967.

Review Denied Nov. 28, 1967.

Brown, Vlassis & Bain, by George E. Hilty, Phoenix, for appellant.

Charles W. Stokes, Casa Grande, for appellees.

MOLLOY, Judge.

This is an appeal from a judgment of the superior court of Pinal county, Cause No. 19693, denying a landlord eviction of tenants of farm property. The action below was a summary proceedings by the appellant-landlord in pursuance of A.R.S. § 33–361,[1] charging a violation of the lease by the tenants in not paying taxes, in charging personal expenses to the lease operation, and in not farming the land properly.

The written lease agreements under which the tenants occupied the subject farm land provided, among other things:

(1) that the landlord and the tenants should divide between them any profit realized on crops which were grown upon the subject land;

(2) that production costs would be "charged 50 per cent to the Lessor's share of the crops grown upon the premises, and 50 per cent to the Lessee's share of such crops";

(3) "that each crop shall stand on its own and that any losses on crops grown upon said premises pursuant to said lease shall be borne and paid by Lessee, and that Lessor shall in no manner be liable for any such losses";

1. A.R.S. § 33–361, in pertinent part, reads:

"A. When a tenant neglects or refuses to pay rent when due and in arrears for five days, *or when tenant violates any provision of the lease,* the landlord or person to whom the rent is due, or his agent, may re-enter and take possession, or, without formal demand or re-entry, commence an action for recovery of possession of the premises." (Emphasis added)

(4) that real property taxes accruing against the subject property were to be treated as "a production cost" and "50 per cent of the taxes shall be paid by Lessor and 50 per cent by the Lessee"; and

(5) that in the event that the tenants should fail to pay rent or "to comply with any other provisions of the lease," the landlord, after thirty days written notice and failure to remedy, "may at that time declare said lease to be at an end and recover possession of said premises without further notice."

For the purposes of this appeal, it is admitted that there were substantial losses sustained in the farming of the subject land for the crop years 1962–63, 1963–64 and 1964–65, and that the realty taxes were not paid when due for calendar years 1963 and 1964.

On appeal, the landlord contends, among other things, that the trial court erred in denying him relief due to the tenants' failure to pay the realty taxes. The landlord has taken the position that the tenants had the obligation to pay the entire tax billed for the calendar years 1963 and 1964 because of the substantial net losses during these years. On March 14, 1965, the landlord made a written demand on the tenants to the effect that the tenants should pay these taxes, informing the tenants that the property had been sold for failure to pay 1963 taxes. By May 5, 1965,[2] these taxes remained unpaid, and the landlord gave the tenants written notice of cancellation of the lease.

After the commencement of this action, the tenants paid into the clerk of the superior court sufficient money to pay the delinquent realty taxes in full. The "memorandum" accompanying this payment stated that it was paid " * * * with the understanding that if the Court should rule against [sic] defendants that this cashier's check will be returned to them." At the commencement of the trial these funds were released, by stipulation of counsel, to the Pinal County Treasurer to satisfy these taxes and the judgment below is defended on the basis of this "tender."

■ It is our opinion that the payment into court of these taxes by the tenants was untimely and of no moment because a payment into court of taxes, under a conditional tender such as this, was not a payment of the taxes, as required by the lease. Cf. Lortz v. Rose, 346 Mo. 1212, 145 S.W.2d 385 (1940); Boyd v. Weeks, 2 Denio 321, 43 Am.Dec. 749 (N.Y.1845); Annot., 100 A.L.R. 264, 293 (1936). Under any construction of the lease agreement, the tenants were obligated to pay at least one half of the tax bill. Under applicable statute,[3] the tenants could have paid, until the tax installment became delinquent, as little as 10 per cent of the tax. The tenants, however, paid nothing. We hold that the nonpayment of these real property taxes was a material breach of the lease. Woodmen of the World Life Insurance Soc. v. Knudsen, 275 F.2d 440 (5th Cir. 1960); cf. National Dollar Stores v. Wagnon, 97 Cal.App.2d 915, 219 P.2d 49 (1950); Hudson v. Price, 273 S.W.2d 518 (Mo.App.1954).

■ Both under the express verbiage of this lease and under applicable statute (quoted n. 1 supra), *any* breach of this lease on the tenants' part gave the landlord the option to terminate. Undoubtedly, there might be trivial breaches which should be ignored by a court, see Keating v. Preston, 42 Cal.App.2d 110, 108 P.2d 479 (1940), but

2. On May 1, 1965, the second half of the 1964 taxes became delinquent. A.R.S. § 42–342.

3. A.R.S. 42–345.
    "A. At any time before either installment of the annual tax becomes delinquent, the county treasurer shall accept a partial payment or payments thereon in an amount not less than ten per cent of the installment, but no partial payment shall be accepted in an amount of less than five dollars. The treasurer shall credit the taxpayer with the payment, and if any part of the tax or any installment thereof remains unpaid at the date of delinquency, the delinquency shall relate only to the amount remaining unpaid."

**310**

the amount of these taxes is in no sense trivial.[4] The delinquency persisted for a substantial period of time and after written notice to correct was admittedly received. Under analogous circumstances, our Supreme Court has held that the trial court has no discretion to refuse to uphold the landlord's plain right of termination. Karam & Sons Mercantile Co. v. Serrano, 51 Ariz. 397, 77 P.2d 447 (1938). See Union Oil Company of California v. Lindauer, 131 Colo. 138, 280 P.2d 444 (1955).

The tenants have not sought to defend the judgment rendered below on any theory of an implied condition arising from the landlord's duty to pay a part of these taxes. This failure undoubtedly arises from recognition of applicable law that:

> "Non-performance of a covenant by one party to a lease or other conveyance of land, unless performance of the covenant is an express condition, does not excuse the other party from performing his covenants  *  *  *."

Restatement of Contracts § 290, p. 429.

See also 32 Am.Jur. Landlord and Tenant § 144, p. 145; 51 C.J.S. Landlord and Tenant § 237, p. 865; and Williston on Contracts § 890, p. 589.

The lower court regarded the provisions in the lease pertaining to whether the tenants were obligated to pay all taxes in years of loss as "ambiguous," and refrained from resolving this ambiguity in the instant action.[5] We also decline to resolve this conflict, both because it is unnecessary to our decision and because we do not as yet have the trial court's construction of this troublesome language, in the light of the surrounding circumstances, as determined by the trial court. See Arizona Land Title & Trust Co. v. Safeway Stores, Inc., 6 Ariz. App. 52, 429 P.2d 686 (1967).

---

4. The record shows the amount paid into the court for taxes was $8,909.79.

Inasmuch as the tax issue is dispositive, we do not deal with other matters raised on appeal. Judgment reversed and remanded with directions to grant landlord an appropriate judgment, terminating the subject lease and restoring to him the possession of the premises.

HATHAWAY, C. J., and KRUCKER, J., concur.

---

5. There was pending at the time of trial an action for an accounting between these parties in which action a resolution of this ambiguity will presumably be made.