672 P.2d 933
DVM CO., a joint venture,
Plaintiff-Appellant,

v.

John BRICKER and Kathleen Bricker,
his wife, dba Basket House,
Defendants-Appellees.

No. 16683–PR.

Supreme Court of Arizona,
In Banc.

Nov. 2, 1983.

Rehearing Denied Dec. 6, 1983.

**590**

Murphy & Posner by K. Bellamy Brown, Michael L. Murphy, Phoenix, for plaintiff-appellant.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Redfield T. Baum, Phoenix, for defendants-appellees.

CAMERON, Justice.

We granted review of a memorandum decision of the Court of Appeals affirming the trial court's judgment holding that though there was a breach of a covenant of a lease, the breach was not "sufficiently material" to require a forfeiture of the lease. We have jurisdiction pursuant to Art. 6, § 5, Arizona Constitution. We reverse.

We consider the following issues:

1. While a forfeiture is pending in the courts, does acceptance of rent by the lessor from the lessee in possession of the property waive the lessor's right to claim forfeiture?

2. Did the trial court err in excluding evidence of materiality concerning the effect of the breach?

3. If there has been a breach of a material covenant in a lease, does the materiality of the breach affect the granting of a forfeiture?

The appellants, DVM Company, leased space in Metrocenter Mall to the appellees, John and Kathleen Bricker, d/b/a Basket House. The lease called for a minimum rental and a percentage of the net sales as defined in the lease. The lease set forth the items that could be sold, including "Arizona Souvenirs," and further provided:

> Tenant shall not use or permit the premises to be used for any other purpose or purposes * * * without the written consent of the landlord first had and obtained.

Article 22 further provided:

> Should Tenant at any time be in default hereunder * * * and should such default or breach of performance continue for more than a reasonable time (in no event to exceed thirty (30)[ ] ) days after written notice from Landlord to Tenant specifying the particulars of such default or breach of performance * * * then Landlord may treat the occurrence of any one or more of the foregoing events as a breach of this Lease, and * * * it shall be, at the option of the Landlord * * *:
>
> (a) The right of the Landlord to declare the term hereof ended and to re-enter the premises and take possession thereof and remove all persons therefrom, and Tenant shall have no further claim thereon or thereunder; * * *.

Sometime during the period of the lease, the Brickers began to sell T-shirts with imprints of movie, TV, and cartoon personalities and with imprints of popular sayings. DVM contended that such sales violated the use restrictions of the lease and sent notice to the Brickers to cease such sales. The Brickers refused, contending that the T-shirts were "Arizona Souvenirs" as allowed by the lease. DVM then brought suit in Maricopa County Superior Court, alleging a breach of lease and seeking to terminate the lease. After trial to the court without a jury, the court held that while selling T-shirts with some identification of Arizona, Phoenix, cactus or such things did not violate the use clause, the sale of T-shirts with movie, TV or cartoon personality imprints did violate the lease. However, the court also found:

> 3. The breach of the lease agreement for the Basket House was not sufficiently material in nature to warrant recovery and possession of the subject premises

under the provisions of A.R.S. § 33–361 or the lease agreement.

The trial court awarded DVM attorney's fees, but refused to terminate the lease. The Court of Appeals affirmed, and we granted DVM's petition for review of the decision of the Court of Appeals.

## ACCEPTANCE OF THE RENTAL PAYMENTS

During the time the matter was disputed and being litigated, the Brickers continued to make the required lease payments. The Brickers claim that by accepting rental payments during the pendency of this court proceeding, DVM waived its right to claim forfeiture. We do not agree. Normally, acceptance of rental payments results in waiver of a claim of breach. *Butterfield v. Duquesne Mining Co.*, 66 Ariz. 29, 32, 182 P.2d 102, 103 (1947). However, "[w]hen a tenant continues in possession pending a determination of an action brought by the landlord to enforce a forfeiture, the tenant is still under an obligation to pay rent and acceptance of these payments does not constitute a waiver of the breach." *Fogel v. Hogan*, 496 P.2d 322, 324 (Colo.App.1972). *See also Wecht v. Anderson*, 84 Nev. 500, 444 P.2d 501, 505 (1968). As long as a tenant is in possession of the property, the landlord should not be forced, pending determination of the matter, to refuse rental payments by a tenant in possession. We hold that under this specific fact situation, accepting rental payments during the pendency of this action does not result in a waiver of a claim to forfeiture.

## EVIDENCE OF MATERIALITY

At trial DVM attempted to offer testimony concerning the materiality of the use restriction.

Q [By DVM's attorney Mr. Murphy] MR. PEDERSON, ARE YOU CONCERNED ABOUT THE SALES BEYOND THE USE CLAUSE ALLOWED BY THE LEASE AS FAR AS OTHER TENANTS ARE CONCERNED?
MR. MAXWELL: OBJECTION, YOUR HONOR, THAT'S BEYOND THE [SCOPE] OF THE PLEADING, NOT RELEVANT.
THE COURT: WHAT WOULD THE RELEVANCE BE, COUNSEL, AS TO THE WITNESSES—
MR. MURPHY: WELL, YOUR HONOR, I INTEND OR WOULD LIKE TO SHOW THAT THE SALES BY THE DEFENDANTS ARE CAUSING A PROBLEM WITH OTHER TENANTS IN THE SHOPPING CENTER AND HOW THE OTHER TENANTS' SALES HAVE BEEN IN FACT AFFECTED BY THIS ALLEGED BREACH OF THE LEASE BY EXPANDING THE USE CLAUSE.
THE COURT: WELL, THE OBJECTION SUSTAINED AT THIS POINT.

DVM claims that the trial court erred in not admitting evidence that went towards the materiality of the breach. We agree. Evidence of the effect of the breach upon other tenants' sales is important in showing the extent of the damages DVM would suffer if the breach was allowed to continue. DVM, as landlord, receives a percentage of the net sales from all or most of the tenants. By limiting different stores to specific items of sale, DVM attempts to obtain the maximum return from each lease. The sale of T-shirts is but one example. Assuming there is a market for a certain number of T-shirts in the shopping center on a particular day, if one shop sold T-shirts and another shop sold something else, then the net sales would presumably be higher than if both shops devoted the same amount of time, space and energy to selling T-shirts. Also, in inducing other tenants to lease space in the shopping center, the landlord may promise that they will be the exclusive sellers of certain items. This provision in the lease, then, is important to the landlord, and we believe DVM should have been allowed to show what effect the breach would have, not only on the net sales in the shopping center, but on the business of competing shops. We might be persuaded that evidence of materiality of the effect of the breach was properly excluded were it not for the fact that the

trial judge based his ultimate decision, at least in part, on the conclusion that the "breach * * * was not sufficiently material in nature to warrant * * * possession of the * * * premises."

The Brickers claim, however, that the issue was not the materiality of the use restriction in the lease, but the materiality of the breach. The Brickers' position would be persuasive only if, as the Brickers contend, the sale of T-shirts of movie stars and comic phrases were in fact "Arizona Souvenirs," within the terms of the lease. Under this interpretation, anything the Brickers sold in Arizona would be an "Arizona Souvenir." We do not read the provisions of the lease in this manner. The T-shirts sold were not "Arizona Souvenirs" and their sale constituted a breach of the lease. It was error to exclude the evidence offered by DVM as to the materiality of the effect of the breach.

### FORFEITURE OF THE LEASE BASED ON BREACH

There is another reason we believe the trial court erred. The Brickers claim and the trial court held that though the sale of the offending T-shirts was a breach of the use restrictions, the breach was not sufficiently material to warrant termination of the lease. Under our statute, materiality of the breach is not an issue.

■ A.R.S. § 33–361 provides, "When a tenant * * * violates any provision of the lease, the landlord * * * may re-enter and take possession * * *." There is no requirement that the breach be material. A.R.S. § 33–1368(A), which applies to residential leases, provides that the landlord may re-enter upon a "material noncompliance" by the tenant of a lease provision. Had the legislature intended to hold commercial lessees and residential lessees to the same standard, it would have expressly so indicated.

■ While we might ignore a trivial breach, see *Bolon v. Pennington*, 6 Ariz. App. 308, 309–10, 432 P.2d 274, 275–76 (1967), if "[the lessee] violates any of the covenants of the lease, and it is provided that such a violation shall cause a forfeiture of his lease, the courts will enforce such a forfeiture." *Karam & Sons Mercantile Co. v. Serrano*, 51 Ariz. 397, 407, 77 P.2d 447, 451 (1938). DVM notified the Brickers of the breach of the lease, and the tenants refused to cease selling the T-shirts. DVM had a statutory right to terminate the lease upon breach by the Brickers. *Thompson v. Harris*, 9 Ariz.App. 341, 346, 452 P.2d 122, 127 (1969).

The decisions of the trial court and the Court of Appeals are reversed, and the matter is remanded to the trial court with directions to enter judgment for DVM, including possession of the premises, and for such other relief, consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.