780 P.2d 1074

**FOUNDATION DEVELOPMENT COR-PORATION, an Arizona corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**LOEHMANN'S, INC., a New York corporation, Defendant–Appellee, Cross–Appellant.**

No. 1 CA–CIV 9735.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 17, 1988.

Review Granted March 7, 1989.

Murphy & Posner by Michael L. Murphy, K. Bellamy Brown, Terry L. Rakow, Roger R. Foote and Gary N. Pederson, Phoenix, for plaintiff-appellant/cross-appellee.

Evans, Kitchel & Jenkes, P.C. by James G. Speer and Elizabeth A. Waters, Phoenix, for defendant-appellee/cross-appellant.

OPINION

GREER, Presiding Judge.

We address whether a tenant's delay in paying a common-area charge was a material breach of the commercial lease, based on *DVM Co. v. Bricker*, 137 Ariz. 589, 672 P.2d 933, *connected case*, 43 B.R.Rep. 344 (D.Ariz.1983), and the "time is of the essence" provision in the lease. We also address whether the landlord's notice demanding payment was sufficiently clear to be effective.

## BACKGROUND

In 1978, Loehmann's, Inc. became the anchor tenant in a shopping center. Loehmann's twenty-year lease provided that it would pay monthly rent in the amount of $3,750. Sections 6.5 and 6.6 of the lease provided that the landlord would furnish the tenant with a statement of the common-area maintenance costs and, at the end of each lease-year, the tenant would pay a percentage of the costs (the common-area charge). Sections 13.2, 13.7, 13.8 and 13.9 of the lease provided that if the tenant failed to pay any charge and did not cure its failure within ten days of receipt of notice of its failure, the landlord could terminate the lease or repossess the leased premises. Lease § 14.9 provided that no waiver by the landlord of any breach by the tenant would be construed as a waiver of any other breach. Section 14.10 provided that any notice to the tenant would be mailed to Loehmann's at both the address of the leased premises (the Phoenix address) and the address at 3450 Baychester Avenue, Bronx, New York 10175 (the Baychester Avenue address). Section 14.12 of the lease provided that, "in any case where either party hereto is required to do any act, the time for the performance thereof shall be of the essence."

In 1986, Foundation Development Corporation became the owner and landlord of the shopping center. On February 23, 1987, Foundation sent its statement explaining the $3,566.44 common-area charge to Loehmann's for the lease-year ending January 1, 1987. Foundation mailed this statement to Kevin Gaw, who worked in Loehmann's real estate department at 2500 Halsey Street, Bronx, New York 10461 (the Halsey Street address). On March 18, 1987, Gaw wrote Foundation questioning Loehmann's percentage of the common-area costs. On March 25, 1987, Foundation wrote Gaw explaining that one building in the shopping center had been sold, increasing Loehmann's percentage. By certified letter dated April 10, 1987, Foundation notified Loehmann's that the common-area charge had to be paid.

We have not yet received your payment in the amount of $3,566.44. We must reinstate time of the essence of your lease and insist that this amount be paid within ten days from the date of this letter.

Foundation did not address the notice to the attention of any individual, but addressed it to both Loehmann's Phoenix address and the Baychester Avenue address. Foundation also sent a copy of the notice to the Halsey Street address.

Loehmann's received the notice at the Phoenix address on April 13 and at the Halsey Street address on April 17, 1987. It had ceased to occupy the Baychester Avenue address in 1981. Loehmann's sent Foundation a check for the common-area charge on April 25, 1987, twelve days after Foundation's notice was received. On April 28, 1987, Foundation filed a complaint against Loehmann's for forcible detainer under A.R.S. § 33–361. Foundation subsequently received the check on April 29, 1987.

These dates may be summarized as follows:

2/23/87: Foundation sent statement

3/18/87: Gaw sent letter questioning assessment

3/25/87: Foundation explained assessment

4/10/87: Foundation sent ten-day notice that payment was due

4/13/87: Loehmann's received notice at Phoenix address

4/17/87: Loehmann's received notice at Halsey Street address

4/25/87: Loehmann's sent payment

4/28/87: Foundation filed complaint

4/29/87: Foundation received payment

On cross-motions for summary judgment, the trial court granted Loehmann's summary judgment, finding that the breach of the lease was trivial:

Forfeiture will not be granted even in a commercial setting where the breach in question is trivial. *Bolon v. Pennington*, 6 Ariz.App. 308, 309, 432 P.2d 274 (1967); *DVM Co. v. Bricker*, 137 Ariz. 589, 592, 672 P.2d 933 (1983); and

The Court having further found that the landlord has ultimately been damaged at most by the loss of interest on $3,566.44 for 48 hours. (This assumes that had the check been timely mailed, the postal service would have delivered the check two days earlier than they did.) Given the magnitude of this lease, the obvious value of the property and the lease, the approximate amount of money annually due under the lease and the history of performance under the lease, the Court finds the breach in this case to be trivial. Certainly the breach in this case was dramatically less significant than the breaches in either *Bolon* or *DVM.* ...

Foundation raises the following issues:

(1) Was the breach material based on *DVM Co. v. Bricker*, 137 Ariz. 589, 672 P.2d 933 (1983); and

(2) Was the breach material based on the "time is of the essence" provision.

Loehmann's raises these issue in its cross-appeal:

(1) Was the notice effective; and

(2) Did Loehmann's remove the condition of default before Foundation filed the complaint?

## DVM CO. v. BRICKER

■ Foundation argues that the trial court erred in finding that the breach by Loehmann's was trivial based on the Arizona Supreme Court's decision in *DVM Co. v. Bricker, supra.* Under Arizona law, the landlord has the right to commence a forcible detainer action if the tenant violates *any* provision of the lease:

When a tenant neglects or refuses to pay rent when due and in arrears for five days, or when tenant violates any provision of the lease, the landlord or person to whom the rent is due, or his agent, may re-enter and take possession, or, without formal demand or re-entry, commence an action for recovery of possession of the premises.

A.R.S. § 33–361 (Supp.1987).

In *DVM Co. v. Bricker*, the supreme court stated that there was no requirement in A.R.S. § 33–361 that the breach be material:

A.R.S. § 33–361 provides, 'When a tenant ... violates any provision of the lease, the landlord ... may re-enter and take possession....' There is no requirement that the breach be material. A.R.S. § 33–1368(A), which applies to residential leases, provides that the landlord may re-enter upon a 'material noncompliance' by the tenant of a lease provision. Had the legislature intended to hold commercial lessees and residential lessees to the same standard, it would have expressly so indicated.

*DVM Co. v. Bricker*, 137 Ariz. at 592, 672 P.2d at 936; *see* Annot., *Commercial Leases: Application of Rule that Lease May Be Cancelled Only for "Material" Breach*, 54 A.L.R. 4th 595, 615–16 (1987). The court stated that it might ignore a trivial breach, but did not define the term "trivial breach." However, it provided that if a tenant violated a lease provision and the lease provided that such violation would cause a forfeiture, then the courts would enforce such forfeiture.

While we might ignore a trivial breach, *see Bolon v. Pennington*, 6 Ariz.App. 308, 309–10, 432 P.2d 274, 275–76 (1967), if "[the lessee] violates any of the covenants of the lease, and it is provided that such a violation shall cause a forfeiture of his lease, the courts will enforce such a forfeiture." *Karam & Sons Mercantile Co. v. Serrano*, 51 Ariz. 397, 407, 77 P.2d 447, 451 (1938). DVM notified the Brickers of the breach of the lease, and the tenants refused to cease selling the T-shirts. DVM had a statutory right to terminate the lease upon breach by the Brickers. *Thompson v. Harris*, 9 Ariz. App. 341, 346, 452 P.2d 122, 127 (1969). *DVM Co. v. Bricker*, 137 Ariz. at 592, 672 P.2d at 936.

In support of its statement that it might ignore a trivial breach, the court in *DVM Co. v. Bricker* cited the Arizona Court of Appeals' decision in *Bolon v. Pennington*, 6 Ariz.App. 308, 432 P.2d 274 (1967), which in turn cited the decision by the California District Court of Appeals in *Keating v.*

*Preston*, 42 Cal.App.2d 110, 108 P.2d 479 (1940). The *Keating* court held that the trial court was justified in refusing to terminate the lease of a tenant who accepted money from her customers to be bet in horse races. In addition to concluding that the tenant's activities constituted a trivial violation of the law and that the landlord waived any breach, the court concluded that the lease did not authorize rescission of the lease for the lessee's violation of the law.

Certainly the breach of an implied covenant will not result in a forfeiture of a lease unless the instrument declares that it shall be so construed. If a lease fails to specify that the demised premises shall be used only for a designated business, the inference is that it may be used for other appropriate purposes.

*Id.* at 115, 108 P.2d at 484.

Based upon *DVM Co. v. Bricker*, we conclude that the trial court erred in finding that Loehmann's breach was trivial. Section 6.5 of the lease provided that, at the end of the lease-year, the tenant would pay the common-area charge. Section 13.2 provided that if the tenant did not pay any charge within ten days after receipt of notice that the charge was due, the landlord could terminate or repossess. Therefore, Loehmann's violated a provision of the lease, and the lease provided that such violation would cause a forfeiture within the meaning of *DVM Co. v. Bricker*.

Loehmann's argues that it is a well-established principle that forfeitures are disfavored. Loehmann's notes, for example, that the defenses of fraud, accident, and mistake may be raised in a forcible detainer action. *Thomas v. Given*, 75 Ariz. 68, 70, 251 P.2d 887, 889 (1952) (applying Laws 1937, ch. 30, § 3, which was a predecessor to the current forcible detainer statute, A.R.S. § 33–361).

We recognize that, under general contract law, a comparatively slight breach is merely a partial breach which would not justify non-performance of a contract. 5A *Corbin on Contracts* § 1176, at 309 (1964); 6 *Williston on Contracts* § 827, at 67 (W. Jaeger 3d ed. 1962); *see* Childers, *Conditions in the Law of Contracts*, 45 N.Y.U. L.Rev. 33, 34, 46 (1970) (virtually all contemporary American courts refuse to effect slight breaches, which would defeat the parties' reasonable expectations); *Restatement (Second) of Contracts* § 229 (1981) (courts may excuse immaterial breaches to avoid disproportionate forfeiture). *See generally*, Annot., *supra*, 54 A.L.R. 4th at 603–04 (1987).

■ However, the principle that forfeitures are disfavored is not embraced by Arizona courts in the landlord-tenant context. *DVM Co. v. Bricker, supra; see also, City of Phoenix v. Bellamy*, 153 Ariz. 363, 365–66, 736 P.2d 1175, 1177–78 (App. 1987). The supreme court's decision in *Thomas*, 75 Ariz at 70, 251 P.2d at 889, is not inconsistent with its decision in *DVM Co. v. Bricker*. In *Thomas*, the Arizona Supreme Court held that the trial court correctly denied forfeiture based on the trial court's conclusion that the tenant's non-payment was inadvertent. In *DVM Co. v. Bricker*, the court did not state that contract defenses such as fraud, accident, and mistake could not be raised in a forcible detainer action. We also note that Loehmann's does not claim that its delay in paying the common-area charge was inadvertent.

## THE "TIME IS OF THE ESSENCE" PROVISION

■ Foundation also argues that, because the lease provided that time was of the essence, the trial court erred in finding that the breach by Loehmann's was trivial. In other words, Foundation argues that, even if Loehmann's delay in paying the common-area charge would otherwise have been a trivial breach, the "time is of the essence" provision made it a material breach. The Arizona Supreme Court has held that a "time is of the essence" provision operates to give a minor breach the effect of being material. *Zancanaro v. Cross*, 85 Ariz. 394, 397, 339 P.2d 746, 749 (1959); *see also, Chicago Title Ins. Co. v. Renaissance Homes, Ltd.*, 139 Ariz. 494, 679 P.2d 517 (App.1983). We also conclude, based on *Zancanaro*, that the trial

court erred in finding that the breach was trivial.

Loehmann's argues that the effect of a "time is of the essence" provision is always a question of degree. In the context of partially-performed contracts, we recognize that numerous commentators have considered breaches of "time is of the essence" provisions to be merely one factor in determining whether the breaches were material. *Corbin, supra,* § 1177, at 316 (if time is made of the essence by an express provision, then "a plaintiff who has not performed within the stated time will be refused specific performance unless an unjust forfeiture would result"); *Williston, supra,* § 852, at 210–11 (if a purchaser possesses the property and has made partial payments and time is made of the essence, "[s]uffice it to say the possession and part performance by the purchaser will have great weight in extending the period in which equity may grant specific performance of a contract for the sale of land"); *Restatement (Second) of Contracts* § 241 and § 242, comment d (the use of "[such] stock phrases as 'time is of the essence' ... [is] to be considered along with other circumstances in determining the effect of delay"); Childers, *supra,* 45 N.Y.U.L.Rev. at 57 ("time is of the essence" provisions are "metaphors [which] are meaningless unless their justification in the litigation is factually demonstrated"). Again, however, the concept these commentators suggest is not the law in Arizona, as articulated by our supreme court in *Zancanaro, supra.*

## EFFECTIVENESS OF THE NOTICE

■ Foundation addressed its notice to Loehmann's at both its Phoenix and its Baychester Avenue addresses, as required under lease § 14.10. *See Glad Tidings*

*Church v. Hinkley,* 71 Ariz. 306, 311, 226 P.2d 1016, 1020 (1951) (a party must strictly comply with the contract in order to enforce a forfeiture provision). Nonetheless, Loehmann's argues that the notice to it was ineffective because the notice was not addressed to Gaw at its Halsey Street address. Loehmann's asserts that Foundation knew Gaw would be overseeing Loehmann's payment of the common-area charge. Although Loehmann's does not use the term equitable estoppel, it is apparently arguing that Foundation was equitably estopped from enforcing section 14.10 of the lease.

We do not address the merits of this argument because Loehmann's failed to present it in the trial court. Loehmann's argued below that notice to it was ineffective because it was contrary to the terms of an amendment to the lease, which required that all notices be addressed "Attn: President" at the Halsey Street address.[1] In their joint statement of facts for their cross-motions for summary judgment, the parties stated that the president of Loehmann's, Allan Bogner, would have been available to receive any notice had it been addressed to his attention. The parties also stated that Loehmann's general counsel, Marvin Gardner, and senior staff accountant, Phillip Martucci, handled and approved payment of the common-area charge. The parties did not mention Gaw.

Loehmann's also argues that the notice was ineffective because it was vague, noting that the notice did not specify any lease provision or otherwise indicate the effect of noncompliance. Loehmann's cites Professor Corbin's statement that notice to re-establish a condition of timely performance must be clear:

---

1. This argument was based on an agreement between Loehmann's and LVP Associates, a former owner of the shopping center. In 1982, in settlement of an air conditioning dispute with Loehmann's, LVP Associates agreed to pay $10,000 into an escrow account to be used for air conditioning expenses. Section 5 of their agreement provided that any written notice to Loehmann's would be sent to the attention of the president at the Halsey Street address. Section 6 of their agreement stated that it would serve as an amendment to the lease. However, in 1986, Loehmann's signed a statement addressed to Foundation certifying that the lease contained their entire agreement, except for two amendments dated in 1979. On appeal, Loehmann's does not argue that Foundation knew about, or should have complied with, section 5 of its agreement with LVP Associates.

After a condition of payment of instalments [sic] (or of other performance) on time has been eliminated by accepting such payments after default or by a mere waiver, it can be reestablished by giving a definite notice to the debtor, provided that the notice gives a reasonable time for making up past deficiency and specifies that later instalments [sic] must be paid on time as originally agreed. The notice must be clear and definite both as to time of payment and to the effect that non-performance on time will operate as a discharge of contract; threatening forfeiture or suit, without a time limit, is not enough.

3A *Corbin on Contracts* § 722, at 381–82 (1964).

Foundation's notice stated that Foundation "must reinstate the time of the essence of your lease and insist that this amount be paid within ten days from the date of this letter." Under the lease, in the event of a late payment, Foundation had no remedy other than termination or repossession. We conclude that Foundation's notice was sufficiently clear to be effective.

## COMPLAINT FILED AFTER PAYMENT

■ Loehmann's argues that Foundation did not comply with lease § 13.7 because Foundation filed its complaint three days after Loehmann's mailed its payment of the common-area charge. Section 13.7 provided that, prior to the removal of a condition of default, Foundation had the right to terminate the lease and to repossess the leased premises:

*13.7* In the event any Condition of Default shall occur (notwithstanding any waiver, license or indulgence granted by Landlord with respect to any Condition of Default in any former instance) Landlord, then or at any time thereafter, but prior to the removal of such Condition of Default, shall have the right at its election, either [to terminate or to repossess].

Loehmann's concedes that it did not raise this argument in the trial court. However, it urges that we may consider the argument on appeal because the facts supporting the argument were fully developed in

the trial court below. *See Gibson v. Boyle,* 139 Ariz. 512, 517 n. 1, 679 P.2d 535, 540 n. 1 (App.1983); *Rhoads v. Harvey Publications, Inc.,* 131 Ariz. 267, 269, 640 P.2d 198, 200 (App.1981).

As a general rule, we do not consider arguments not presented in the trial court. *Sahf v. Lake Havasu City Ass'n For The Retarded,* 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986). We do have the power to affirm a summary judgment on a ground not considered below. *Id., citing Helena Rubinstein, Inc. v. Bau,* 433 F.2d 1021, 1024 (9th Cir.1970); *see* 10 Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 2716, at 658 (1983). We exercise that power with extreme caution, however, because we may deprive the non-moving party of the opportunity to present facts relevant to the new ground. *Rhoads,* 131 Ariz. at 269, 640 P.2d at 200. If we were to affirm Loehmann's summary judgment based on our interpretation of lease § 13.7, we might deprive Foundation of the opportunity to present facts relevant, for example, to the meaning of the word "removal" in the phrase "removal of such Condition of Default." Therefore, we will follow our general rule and will not consider Loehmann's argument about this section of the lease.

## ATTORNEYS' FEES ON APPEAL

■ Foundation requests attorneys' fees pursuant to an attorneys' fees provision in the lease. As a general rule, attorney's fees are only awarded if expressly provided for by contract or statute. *Taylor v. S. Pac. Transp. Co.,* 130 Ariz. 516, 637 P.2d 726 (1981). However, the type of recovery available in a forcible detainer action is limited by A.R.S. § 12–1178 to possession, costs and unpaid rent. *DVM Co. v. Stag Tabacconist, Ltd.,* 137 Ariz. 466, 468, 671 P.2d 907, 909 (1983).

In *DVM Co. v. Stag Tobacconist, Ltd.,* the supreme court upheld the trial court's refusal to award attorney's fees in a forcible detainer action on the ground that there was no statutory provision authorizing the award of fees. In a footnote, the court stated:

We note that the Arizona Legislature has recently amended A.R.S. § 33–1315(A)(2) making a prevailing party in a forcible entry and detainer action eligible to be awarded attorney's fees pursuant to A.R.S. § 12–341.01 regardless of whether the rental agreement provides for such an award. Therefore, this decision is only applicable to those matters brought prior to the effective date of the statutory amendment.

*Id.* at 467 n. 1, 671 P.2d at 908 n. 1.

Arizona Revised Statutes § 33–1315 is part of the Arizona Residential Landlord and Tenant Act, A.R.S. § 33–1301 *et seq.,* which applies only to rental of dwelling units, A.R.S. § 33–1304, and not to cases involving non-residential property. Moreover, the footnote in *DVM Co. v. Stag Tobacconist, Ltd.,* is dicta, not precedent. *See Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 638 P.2d 1324 (1981), *appeal dismissed,* 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310, *reh'g denied,* 459 U.S. 899, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). The legislature has authorized the award of attorney's fees in residential forcible detainer actions, A.R.S. §§ 33–1315(A)(2) and 12–341.01; however, we have been unable to find any statutory provision allowing attorney's fees in a commercial forcible detainer action. Therefore, Foundation is not entitled to attorneys' fees incurred at trial or on appeal.

## CONCLUSION

We reverse the trial court's judgment and direct it on remand to enter summary judgment in favor of Foundation.

CORCORAN and HAIRE, JJ., concur.