352 P.2d 768

**WALKENG MINING COMPANY, a corporation, Appellant,**

v.

**W. E. COVEY, Edward Claunts, J. M. Marston, James Wulfenstein, Elroy Wulfenstein, Charles Yarbrough and Arizona American Copper Company, a Nevada corporation, Appellees.**

No. 6579.

Supreme Court of Arizona.

May 25, 1960.

Carl D. Hammond, Kingman, Edson Abel, Middletown, Cal., and Stockton & Karam, Phoenix, for appellant.

O. Ellis Everett, Kingman, Dolley, Jessen & Painter, Louis Miller, Los Angeles, Cal., of counsel, for appellees.

RAUL H. CASTRO, Superior Court Judge.

Plaintiff-appellant, Walkeng Mining Company, a corporation, filed a forcible entry and detainer action against the defendants-appellees, W. E. Covey et al. The parties will herein be referred to as plaintiff and defendants. The complaint alleged that on or about January 3, 1956 the plaintiff was in peaceful and actual possession and owned three mining claims, Gem 1, Gem 2, and Gem 3, in Mohave County, having located said claims on October 8, 1955.

Allegedly, the defendants on or about January 3, 1956, unlawfully entered the mining claims hereinbefore described and ousted plaintiff by means of threats and menacing conduct. It was further alleged that ever since said date defendants had forcibly and unlawfully held possession of said claims, excluding plaintiff from use and enjoyment thereof and from completing its location work, thus damaging plaintiff in the sum of $1,000.

Defendants answered by way of a general denial and with four special defenses. The first and fourth overlap and are as follows: Deny a forc'ble entry and detainer and that plaintiff was ever in possession of the mining claims in question. Allege defendants were on January 3, 1956, in possession of the claims and at all times thereafter. The second defense was that the three Gem mining claims were not public domain open for location of mining claims on October 8, 1955, as said claims were on March 3, 1933, withdrawn land under a First Form Reclamation Withdrawal Order of the Secretary of Interior of the United States. Defendants further alleged that since that date the land has continued to be withdrawn and mining locations of October 8, 1955, were a nullity and of no force and effect.

The third defense was that because of plaintiff's non-compliance with the Arizona law as to locations, their locations of October 8, 1955, were invalid.

The case was tried to the court sitting without a jury. Judgment was entered against plaintiff and in favor of defendants, finding that defendants were not guilty of forcible entry and detainer. Plaintiff appealed from this judgment and from all intermediate orders and rulings of the court.

The facts which are not too much in dispute will be stated in a light most favorable to a sustaining of the judgment. Berger v. Bhend, 79 Ariz. 173, 285 P.2d 751; Kellogg v. Bowen, 85 Ariz. 304, 337 P.2d 628. The pertinent facts are as follows:

The land covering unpatented mining claims Protection Lode, Protection No. 1

and Protection No. 2 is substantially the same as the ground covered by the three unpatented Gem mining claims. These claims are all located within the boundaries of the Lake Mead Recreation Area.

The Protection Group claims were originally located by a Mrs. B. T. McMasters in 1914. In 1918 Mrs. McMasters conveyed the claims to Arizona American Copper Company (not the defendant corporation). Defendants became the successor in interest to Mrs. McMasters' claims by acquiring title to and ownership of claims by mesne conveyances, assignments and transfer of the interest of Mrs. McMasters and the predecessor corporation.

On March 3, 1933 the Secretary of the Interior pursuant to the Reclamation Act (Sec. 3, Act of June 17, 1902, 43 U.S.C.A. § 416) withdrew all of Township 32 North, Range 10 West of the G & SRB & M "excepting any tract title to which has passed out of the United States" from public entry under the first form of withdrawal. The parties to this action stipulated that at the time of the withdrawal order, March 3, 1933, the group of Protection claims, which are situated therein, were valid claims.

No assessment work was done on these claims for the mining year ending July 1, 1939. In September 1939, V. Loraine Cox and her brother Kenneth Cox filed notices of relocation for the area embraced within the Protection Claims as the Cox-Ross Mine and Cox-Ross Mine No. 1. Assessment work was done on these mining claims by Cox until 1949, at which time he leased his claims to Lorin Whitmore and associates. Three years later the Whitmore group sub-leased to defendant James Wulfenstein. The Bureau of Land Management notified Wulfenstein that he was a trespasser on federal lands and required him to stay off the mining claims. Wulfenstein surrendered the claims to Cox, who endeavored to obtain a lease from the Bureau of Land Management but did not pursue the matter on ascertaining that the Protection claims (the McMasters interests) had been purchased by defendant Arizona American Mining Company.

Shortly after defendant's acquisition of title to Protection claims in August 1955, work was resumed by the defendant corporation towards the construction and restoration of a road leading to the claims sites. The road, 27 miles in length, was completed in January, 1956. From December 1955, up to time of trial about $30,000 was spent by defendant in exploratory work in these claims.

Jerry Deer, formerly employed by defendant W. E. Covey, was employed by plaintiff to stake out claims in the Copper Mountain area. Deer had seen photographs taken by Covey of the Copper Mountain area and after his discharge by Covey informed plaintiff of photographs taken by Covey. On October 8, 1955, Deer entered

the area on foot alleging that the area was unoccupied and that there were no roads. He posted notices of location in the area and the claims were named Gem No. 1, Gem No. 2 and Gem No. 3, virtually covering the same ground encompassed by the Protection group. The names of the locators were M. E. Kirk and Henry Rystrom, who later quitclaimed the Gem claims to plaintiff. On October 8, 1955, a representative of Lake Mead Recreation Service made entries in field notes to the effect that mining in Lake Mead Recreation area could only be carried by permit issued by the Bureau of Land Management.

On January 4, 1956, Deer returned to the Protection mining claims site with four mine workers and a deputy sheriff of Mohave County. This time Deer and companions drove over defendant's newly constructed road. Deer had supper with defendants' group and advised them he had returned to complete location work. He was then notified by defendants that he had no right to be there and was trespassing. He departed and returned on January 11, 1956, using defendants' road ignoring the "No Trespassing" signs and over objections from defendants' foreman, then in possession of the property. Deer entered the claims and posted three new notices of location in the name of Vern Pickrel, who quitclaimed to plaintiff. The following legal questions are presented: (1) Did title to the Protection group mining claims ever pass out of the United States? (2) Did the order of the Secretary of the Interior, supra, withdraw the land encompassed by mining claims Protection Lode, Protection No. 1 and Protection No. 2, which for purposes of this appeal is the same land covered by mining claims Gem No. 1, Gem No. 2 and Gem No. 3? (3) Was the ground covered by the Protection group mining claims subject to relocation after the government order of March 3, 1933?

■ This leads us to an analysis of the nature of this action. It is a forcible entry or detainer action, thus being a statutory proceeding. Olds Bros. Lumber Co. v. Rushing, 64 Ariz. 199, 167 P.2d 394. The statutes involved are A.R.S. §§ 12–1171, 12–1172 and 12–1177(a).

■ The language of these statutes is clear and unambiguous. The right to actual possession is the only issue to be determined. The action of forcible entry or detainer is possessory in its character. This Court has on numerous instances interpreted this statute. Bishop v. Perrin, 4 Ariz. 190, 35 P. 1059; Sullivan v. Woods, 5 Ariz. 196, 50 P. 113; Felber v. Thorpe (Ausenhause), 19 Ariz. 594, 173 P. 1058; Foster v. Black, 20 Ariz. 64, 176 P. 845; Cannon v. Arizona Game & Fish Commission, 85 Ariz. 1, 330 P.2d 501.

■ Forcible entry or detainer being a "possessory" action, it is well to note cer-

tain legal principles involved in the "law of possession." In the recent case of Rundle v. Republic Cement Corporation, 86 Ariz. 96, 341 P.2d 226, we covered this matter. We shall quote applicable excerpts therefrom. "American Mining Law, Fourth Edition, (edited by A. H. Ricketts), Vol. 1, Ch. XIX, §§ 382, 383, and 384:

Section 382. Introductory

"The main difference between an 'adverse suit' and a 'possessory action' is that in an adverse suit the judgment therein affects the title to the ground in dispute as between the parties thereto and the government and the judgment in a possessory action affects only the title to the ground as between parties litigant. As a general rule an action in ejectment, or a suit to quiet title, as circumstances may dictate, is as proper in one class of cases as in the other, * * *."

Section 383. Actions

"A possessory action for the recovery of any mining title or for damages to any such title is adjudged by the law of possession between the parties, although the paramount title to the land is in the United States. This leaves the United States entirely out of consideration, and neither party can take advantage of the paramount title of the United States either to sustain his own title or to defeat that of his adversary."

Section 384. Law of Possession

"The law of possession means that the prior location and occupation carry with them the prior and better right; or, in other words, the possessory right is the right to explore and work the property under the existing law and regulations. All controversies as to mining claims before patent must be determined by the law of possession. * * *"

Having reviewed the fundamental and basic elements of "possessory actions", we shall now consider the merits of plaintiff's various assignments of error.

Prior to March 3, 1933, or subsequent thereto, did title pass from the United States Government to the locators, or rightful successors, of the Protection Group mining claims?

It is conceded by the parties herein that the Protection Group mining claims were valid unpatented mining claims. That being so, then what rights are acquired by ownership to a valid unpatented mining claim? A valid unpatented mining claim, until patent has been issued, is held only as possessory right until such time as patent is issued. Guerin v. American Smelting, etc., Co., 28 Ariz. 160, 236 P. 684. The miner (locator) holds a qualified title dependent upon possession and maintained by compliance with local directions. He is not com-

pelled to advance to patent nor to pay for the use of the land. His title is *not absolute* in a technical sense, nor secure in a practical sense, until he gets the fee simple title by issuance of a patent.

■ None of the parties herein had perfected their claims to the point of obtaining a patent, therefore, at the most the locators (Mrs. B. T. McMasters and successors) had a vested property right with the fee remaining in the United States. See Black v. Elkhorn Mining Co., 163 U.S. 445, 449, 16 S.Ct. 1101, 41 L.Ed. 221.

Plaintiff relies heavily on the case of Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U.S. 428, 430, 12 S.Ct. 877, 36 L.Ed. 762, and on 36 Am. Jur. Mines and Minerals, Section 105, p. 353, for the proposition that title in fee passes from the United States to a locator of a valid unpatented mining claim. On careful reading of these legal authorities, we do not find them to so hold.

■ Plaintiff contends that the Protection Group mining claims being valid claims were exempt from the U. S. Government withdrawal order of March 3, 1933. Also, that the claims in question were not segregated from the public domain, therefore, were subject to relocation upon default by the locators of the Protection Group or their rightful successors. We previously held that title to the Protection Group had not passed from the United States. The ex-

clusion clause in the government withdrawal order of March 3, 1933, read as follows: "excepting any tract the title to which has passed out of the United States." It was heretofore stated that a locator of a mining claim had the right of exclusive possession or a vested possessory right with title in fee remaining with the United States Government. It is undisputed that none of the mining claims were patented. Title, therefore, remained in the United States. Government. In interpreting the meaning of the word "title" under the facts and circumstances of this case, we feel that it was the intent of the Secretary of Interior to refer to "title in fee simple."

Great reliance is placed by plaintiff in the case of Navajo Indian Reservation, 30 L.D. 515, where the Secretary of the Interior considered an executive order setting apart certain Arizona lands as an Indian Reservation. It was held that valid mining locations on the date of the Order, May 17, 1884, came within the purview of the excepting clause, never becoming part of the reservation, but remaining a part of the public domain. The exclusionary clause in that case reads as follows:

"*Provided*, That any tract or tracts within the region or country described as aforesaid which are settled upon or occupied, or to which valid rights have attached under existing laws of the United States prior to date of this or-

der, are hereby excluded from this reservation."

This reservation clause can be distinguished, on the first blush, from the "exclusion" clause, " * * * title to which has passed out of the United States," which is now the subject of our interpretation. In the Navajo Indian Reservation case, supra, the executive order *excluded* tracts *which were settled upon, occupied or to which valid rights had attached;* this broad phraseology is not used in the excepting clause in the case which we are now considering. The Navajo Indian Reservation case, supra, is not an authority in point.

The next issue is whether the Protection Group mining claims were subject to relocation after March 3, 1933. The Protection Group mining claims were withdrawn from the public domain on March 3, 1933. Nevertheless, all existing possessory rights in the Protection Group claims were not disturbed and were honored by the United States Government. By withdrawal order of 1933, the government prohibited the relocation of the claims in dispute herein.

The Protection Group, therefore, by virtue of being valid and subsisting claims were segregated from the public domain and not subject to relocation. Quoting 58 C.J.S. Mines and Minerals § 59, p. 113:

"Under the various statutes, the ground included within the boundaries of a valid location of a mining claim is, by virtue of such location, withdrawn or segregated from the public domain, and the exclusive right of possession and enjoyment thereof becomes vested in the locator, and so remains as long as he complies with the acts of congress and the local statutes and regulations. * * *"

The owners of the Protection Group had the right to the exclusive possession and occupancy of the land for mining purposes, subject only to the right of forfeiture by the United States Government.

Facts indicate that in the mining year ending July 1, 1939, the annual assessment work was not performed by the locators or their successors in interest to the Protection Group mining claims. Did this fact in itself create a forfeiture whereby the land in question became part of the public domain and made it subject to relocation? The answer is "No." The Protection Group claims having come within the purview of the withdrawal order of March 3, 1933, the right of forfeiture on a default then would vest solely with the United States Government. It will be noted that default in the assessment work occurred in 1939 and the withdrawal order was on March 3, 1933.

Concerning the default in performance of annual assessment work, the case of Wilbur v. United States ex rel. Krushnic, 280 U.S. 306, 50 S.Ct. 103, 104, 74 L.Ed. 445, held as follows:

"Prior to the passage of the Leasing Act, annual performance of labor was not necessary to preserve the possessory right, with all the incidents of ownership above stated, as against the United States, but only as against subsequent relocators. So far as the government was concerned, failure to do assessment work for any year was without effect. Whenever $500 worth of labor in the aggregate had been performed, other requirements aside, the owner became entitled to a patent, even though in some years annual assessment labor had been omitted. P. Wolenberg et al., 29 L.D. 302, 304; Nielson v. Champagne Mining and Milling Co., 29 L.D. 491, 493."

Therefore, the fact that defendants, or predecessors, failed to perform their annual assessment work in 1939 did not open the lands embraced in the Protection Group claims to relocation. Subsequent to March 3, 1933, V. Loraine Cox, her successors, and the plaintiff herein were thus precluded from locating any valid claims on the lands in question.

By the same token, on October 8, 1955, the ground covering the Protection Group claims (Gem 1, Gem 2, and Gem 3) were not subject to relocation by Jerry Deer or anyone else.

Even after the withdrawal order of March 3, 1933, the possessory rights of defendants would not be affected as expressed in 73 C.J.S. Public Lands § 38, p. 687, as follows:

"Land which, although originally a part of the public domain, has been granted by the government, or which has been appropriated, reserved, or withdrawn from entry or sale, or certified to, or selected by, a state under its grant, is not subsequently subject to entry, settlement, or disposal under the United States land laws. No subsequent law, or proclamation, or sale, will be construed to embrace land which has been appropriated or granted. * * *" Also: West v. Lyders, 59 App.D.C. 122, 36 F.2d 108.

We need not consider other points raised in plaintiff's assignment of error, as they are not material in view of the law and facts governing the case.

For reasons stated herein, we are of the opinion that the lower court was amply justified in finding the defendants not guilty of forcible entry or detainer.

Judgment affirmed.

STRUCKMEYER, C. J., and PHELPS, UDALL and JOHNSON, JJ., concur.

BERNSTEIN, J., being the trial judge, disqualified and Honorable RAUL H. CASTRO, Judge of the Superior Court of Pima County, was called to sit in his stead.