644 P.2d 1314

**COTTONWOOD PLAZA ASSOCIATES,**
**an Arizona partnership,**
**Plaintiff/Appellant,**

v.

**Thomas N. NORDALE, dba Nordale**
**Development, Defendant/Appellee.**

**No. 2 CA–CIV 4150.**

Court of Appeals of Arizona,
Division 2.

Feb. 25, 1982.

---

Miller & Pitt by Robert A. Fortuno, Tucson, for plaintiff/appellant.

Stompoly & Even, P.C. by Beth Amy Hirshberg, Tucson, for defendant/appellee.

OPINION

BIRDSALL, Judge.

The trial court denied the appellant any relief on its forcible detainer complaint against the appellee. We reverse.

The following facts are not in dispute. In June or July, 1980, the appellee rented an office in the appellant's new development. No lease was signed. No rent was paid. The appellee was a partner in the development and they disagreed on what he owed the appellant for excess construction costs and excess capital contribution. The appellant commenced a forcible entry action against the appellee to secure possession of the leased premises. That lawsuit was settled and dismissed after the execution of a lease and separate letter agreement in January, 1981. The appellee thus retained possession of the demised premises.

Since we find the letter agreement most important, we set it forth in its entirety.

LETTER OF AGREEMENT BY AND BETWEEN

COTTONWOOD PLAZA ASSOCIATES by COTTONWOOD DEVELOPMENT

-and-

TOM NORDALE, D.B.A. NORDALE DEVELOPMENT

We, the above parties, hereby agree to the following items:

1. Simultaneously with the execution of this agreement, the parties shall enter into a lease dated November 17, 1980.

2. The parties acknowledge that the Addendum to the foregoing lease provides for the payment by Nordale of excess construction costs in the amount of $14,901.00. Nordale shall have the right to review the Partnership's records to ascertain if any items have been mistakenly charged to his account, provided that Nordale shall not have the right to offset any alleged errors or inaccuracies against the $14,901.00 or any other sums due and owing hereunder or under the Lease. Nordale shall have the right to allege and prove any alleged accounting errors or inaccuracies in an independent action against Cottonwood Plaza Associates.

3. Nordale hereby acknowledges that he owes Cottonwood Plaza Associates $17,329.00 (less a prior contribution of $841.00) on account of his share of H.N.S. Investment's excess capital contribution (calculated in accordance with David Mehl's letter to Tom Nordale of October 17, 1980). Nordale shall have the right to review the Partnership's records to ascertain if the Partnership has actually expended the monies which give rise to the need for excess capital contributions. Nordale shall not have the right to offset any alleged errors against any sums due and owing hereunder or under the Lease.

4. The parties agree that the term of the Lease will be deemed to have commenced on August 1, 1980, notwith-

**230**

standing that Nordale may have been in possession of the premises prior to that date.

5. Nordale shall pay the Partnership its reasonable attorney's fees in the amount of ~~$500.00~~ *$1,500.00* on account of this agreement and the litigation between the parties pending in the Superior Court of the State of Arizona which shall be dismissed upon the execution of this agreement.

6. Nordale agrees to pay interest to the Partnership at the rate of 18% per annum as follows:

    (a) interest on the excess construction costs set forth in paragraph 2 hereof and on the excess capital contributions set forth in paragraph 3 hereof shall accrue as of October 17, 1980 until paid;

    (b) interest on delinquent rent payments (including common area charges) shall accrue as of each respective rental payment date, until paid.

Case No. _194496_

PLAINTIFF'S EXHIBIT NO. _1_

Iden. _5-15-81_

Adm ____

DEFENDANT'S EXHIBIT NO. ____

Iden. ____

Adm. ____

BY: ____

7. Nordale hereby agrees to pay all delinquent rent; the sums due pursuant to paragraphs 2, 3 and 5 hereof, and interest in the following manner:

    (a) $5,000.00 upon the execution of this agreement;

    (b) ~~$5,000.00~~ *$14,500.50* on or before January ~~23~~ *30*, 1981;

    (c) the balance, including all accrued interest and attorney's fees on or before ~~February 20~~, *March 25* 1981.

8. All payments made pursuant to paragraph 7 shall be applied as follows:

    (a) first to the principal amount of delinquent rent plus common area charges, plus sales tax (August 1980 -- January 1981);

    (b) then to interest on delinquent rent;

    (c) then to amounts owing pursuant to paragraph 5 hereof;

    (d) then to interest on the amounts owing pursuant to paragraphs 2 and 3 hereof;

    (e) then to the amounts owing pursuant to paragraphs 2 and 3 hereof.

9. It is understood and agreed that Cottonwood Plaza Associates has entered into the Lease provided for in paragraph 1 based, in part, upon Nordale's entry into and performance of this agreement. Any default under this agreement shall constitute a default under the Lease which shall entitle the Landlord to all of the

remedies set forth therein, including but not limited to termination of the Lease.

10. Time is hereby made of the essence of this agreement. If "time of the essence" has previously been waived, it is hereby reinstated.

This Agreement dated this 26 day of January, 1981.

COTTONWOOD PLAZA ASSOCIATES
by COTTONWOOD DEVELOPMENT

TOM NORDALE: DBA
NORDALE DEVELOPMENT

_____
George Mehl

_____
Tom Nordale    1.26.81

_____
David Mehl

---

The appellee failed to make the payment of approximately $20,000, due March 25, even though the time for that payment was extended to April 27. The regular rent under the lease was paid to the payment due May 1. The appellant terminated the lease and brought this action for forcible detainer.[1] The appellant did not seek recovery of any money judgment except rent due after May 1st.

The trial court ruled that the appellant could not base its action on the failure to pay the $20,000 since it was not rent. It found that the relationship between the parties was more than a simple landlord-tenant relationship and that the summary action of forcible detainer was not available to the appellant.

█ The law is to the contrary. Since the parties are landlord and tenant, and, since the relief sought is possession, the appellant was entitled to proceed under the forcible detainer statute, A.R.S. § 12–1171, et seq. *See Walkeng Min. Co. v. Covey*, 88 Ariz. 80, 352 P.2d 768 (1960); *See also Thompson v. Harris*, 9 Ariz.App. 341, 452 P.2d 122 (1969).

The letter agreement, paragraph 9, clearly provides that the appellant has the right to terminate the lease if the appellee does not make the payments required therein. Upon such termination the appellant is entitled to possession. "If [the tenant] violates any of the covenants of the lease, and it is provided that such a violation shall cause a forfeiture of his lease, the courts will enforce such forfeiture." *Karam & Sons Mercantile Co. v. Serrano*, 51 Ariz. 397, 407, 77 P.2d 447 (1938). Paragraph 9 further provides that a default shall entitle the landlord (appellant) to all remedies set forth in the lease. The lease paragraph 23A gives the appellants the right to terminate the appellee's right to possession "by any lawful means ...." Paragraph 23(C) gives the appellant the right, in the event of default, to pursue "any other remedy now or hereafter available to Landlord under the laws or judicial decisions ...." A.R.S. § 33–361 provides, in pertinent part:

"A. When a tenant neglects or refuses to pay rent when due and in arrears for five days, *or when tenant violates any provision of the lease*, the landlord or person to whom the rent is due, or his agent, may re-enter and take possession, or, without formal demand or re-entry, commence an action for recovery of possession of the premises.

1. The action, like the previous one, is for "un-

lawful" detainer since no force is involved.

B. The action shall be commenced, conducted and governed as provided for actions for forcible entry or detainer, and shall be tried not less than five nor more than thirty days after its commencement." (emphasis added)

Thus in *Bolon v. Pennington*, 6 Ariz.App. 308, 432 P.2d 274 (1967), it was held that the failure of the tenant to pay taxes as required in the lease was a material breach which entitled the landlord to terminate. And in *K K & K Floorcoverings and Domestics v. American Printing Co.*, 7 Ariz. App. 342, 439 P.2d 505 (1968), the court found that the lessees had breached a lease provision requiring them to compete as a discount store, again entitling the landlord to terminate. The *Bolon* case was a summary proceeding in forcible detainer. *K K & K* was an action by the lessees to restrain the lessors from ejecting them.

The appellee also contended in the trial court that the appellant had waived the "time is of the essence" provisions contained in both the lease and the letter agreement. On appeal the appellant addresses this issue, maintaining that this defense was barred as a matter of law because of another lease provision and a demand letter reinstating time is of the essence. We agree. The appellee has failed to respond to these arguments on appeal, arguing instead that this issue could not be decided by the trial court in a forcible entry or detainer action. We disagree.

■ No authority has been cited for the proposition that affirmative defenses may not be urged by a tenant in a forcible detainer action. We recognize that the court cannot try title in such an action. A.R.S. § 12–1177(A) specifically prohibits this:

"A. On the trial of an action of forcible entry or forcible detainer, the only issue shall be the right of actual possession and the merits of title shall not be inquired into."

*Olds Bros. Lumber Co. v. Rushing*, 64 Ariz. 199, 167 P.2d 394 (1946). The affirmative defense of waiver clearly goes to the issue of possession since the landlord is not entitled to possession unless there has been a default and there is no default if there has been a waiver of that default.

■ Turning now to the merits of the waiver defense, we hold as a matter of law from the undisputed facts in the record that the appellants did not waive the time is of the essence provisions and that the appellee was in default.

The payment that the appellee failed to make was due March 25 (paragraph 7(c) of the letter agreement). The appellee testified that prior to that date an officer of the appellant assured him timely payment of that installment would not be required. Although this testimony was controverted, we assume it to be true and that this promise constituted a waiver. Nevertheless, on March 26 the appellee received the following letter from the appellant:

"This letter will inform you that the remaining balance with interest of all sums payable pursuant to our agreement of January 26, 1981 were due on March 25, 1981. I also understand that you have not yet made your March, 1981 rent payment.

If we have previously waived 'time is of the essence' it is hereby reinstated. Gary Swanson has given you a statement of all amounts due and owing under the agreement. Demand is hereby made that those sums, together with your March rent be paid on or before Friday, April 3rd, 1981."

This letter was signed by the same officer who allegedly had waived the time of payment.

On April 2 or 3, the appellee paid the rent due on April 1. This was accepted for the appellant and might, in the absence of any agreement to the contrary, have constituted a waiver. The lease contains such an agreement. Paragraph 33(ii) provides:

"Waiver. The waiver by Landlord of any term, covenant or condition herein

contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding default by Tenant of any term, covenant or condition of this Lease, other than the failure of the Tenant to pay the particular rental so accepted, regardless of Landlord's knowledge of such preceding default at the time of the acceptance of such rent."

A virtually identical lease provision was considered by the court in *Karbelnig v. Brothwell*, 244 Cal.App.2d 333, 53 Cal.Rptr. 335 (1966). The California court held that it was a valid relinquishment of the right of the lessees to assert a waiver. *See also King v. Petroleum Services Corp.*, 536 P.2d 116 (Alaska 1975). Thus the appellant did not waive the appellee's failure to timely pay the March 25 obligation by accepting the April rent.

On April 24 the appellant, by counsel, delivered the following letter to the appellee's office:

"You have failed and refused to make the payment due March 25, 1981 pursuant to the agreement dated January 26, 1981 between you and Cottonwood Plaza Associates. Demand is hereby made that you pay the balance due under the terms of such agreement on or before 5:00 p. m., Monday, April 27, 1981. In the event you fail to make such a payment, the landlord will pursue all legal remedies available against you.

If the landlord has previously waived 'time is of the essence', it is hereby reinstated."

The appellee's office secretary did not remember whether the letter was received on the 24th. The appellee testified he did not see it until mid-afternoon on April 27. In the trial court the appellee implied that the letter was not received until the 27th. Even accepting that it was not received

until that date, the delinquent payment was not made on the 27th, nor the 28th, 29th or 30th. On May 1 the lease was terminated and this action was commenced on May 8. We find, as a matter of law, that the affirmative defense of waiver was not established in the trial court and that the lease was properly terminated.

Reversed and remanded with directions to enter judgment for the appellant for possession and unpaid rent from April 30, 1981.

HOWARD, C. J., and HATHAWAY, J., concur.