### In re MECHANICAL UNLIMITED, INC., Debtor.

### Bankruptcy No. 83–00542.

United States Bankruptcy Court, D. Hawaii.

March 12, 1984.

Gregory Conlan, Honolulu, Hawaii, for debtor.

Mervyn W. Lee, Honolulu, Hawaii, for creditor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER LIFTING STAY

JON J. CHINEN, Bankruptcy Judge.

On January 10, 1984, a hearing was held on the motion of L.R.K. Holdings, Inc., hereafter "LRK", to vacate the automatic stay to enable enforcement of a Writ of Possession against Mechanical Unlimited, Inc., hereafter "Debtor". Testimony was received at the hearing from Lionel Ribellia, the vice president and secretary of Debtor, and Lauren Peiterson of 1st Stop

Realty, the agent for LRK. At the end of the hearing, the Court requested further memoranda on the questions of whether the landlord by its actions had waived its right to enforce the Writ of Possession issued by the District Court of the First Circuit, State of Hawaii, on August 12, 1983; whether LRK was estopped from enforcing the Writ of Possession; and whether there was a new lease between the parties. Additional memoranda were filed by LRK and Debtor. Based upon the evidence adduced, memoranda filed, the record herein and arguments of counsel, Mervyn W. Lee for LRK and Gregory Conlan for Debtor, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor and LRK entered into a lease for the subject premises on May 5, 1981, said premises constituting Debtor's place of business. Debtor has continued uninterrupted occupancy of the premises since May 1981. On August 12, 1983, because of Debtor's failure to pay rent according to the terms of the lease, LRK obtained a Writ of Possession pursuant to Chapter 666 of the Hawaii Revised Statute (hereafter "HRS"), from the District Court of the First Circuit. LRK had not executed the Writ by service or removal of Debtor from the premises when Debtor filed its Chapter 11 bankruptcy petition on November 8, 1983.

After issuance of the Writ of Possession on August 12, 1983, 1st Stop Realty, LRK's property management agent, permitted Debtor to remain on the premises because of Debtor's promise to pay the arrearages and to remain current on its rent. Relying on such promise, 1st Stop Realty billed Debtor for rent in the amount specified in the May 1981 lease and Debtor made certain payments in response to those invoices. However, Debtor failed to keep its promise to pay the arrearages and instead filed its Petition in bankruptcy.

On several occasions, Mr. Peiterson of 1st Stop Realty requested Debtor to vacate the premises. However, when he was advised by Debtor that it had no place to relocate, Mr. Peiterson did not press the issue informally or by enforcing the Writ of Possession. At the hearing, Mr. Peiterson testified:

The reason, the only reason that the sheriff wasn't contacted and the tenant booted out was because we had hopes and promises from the tenant that they would bring those rents current. (TR. at 15).

During this period, and before the Writ was issued, Debtor added approximately $120,000.00 worth of improvements to the premises.

Though Debtor had promised after issuance of the Writ to cure all of the defaults, Debtor has paid rent for only the months of November and December of 1983. As of January, 1984, Debtor was in arrears for at least three months of rent.

## CONCLUSIONS OF LAW

■ **I.  Did LRK waive its right to enforce the Writ of Possession?**

1. Sections 666–13 and 666–14 of the Hawaii Revised Statutes read as follows:

**§ 666–13  Effect of writ.** Whenever a writ is issued for the removal of any tenant, the contract for the use of the premises, if any exists, and the relation of landlord and tenant between the parties, shall be deemed to be canceled and annulled.

**§ 666–14  Writ stayed how, in proceedings for nonpayment of rent.** The issuing of the writ of possession shall be stayed in the case of a proceeding for the nonpayment of rent, if the person owing the rent, before the writ is actually issued, pays the rent due and interest thereon at the rate of eight per cent a year and all costs and charges of the proceedings, and all expenses incurred by plaintiff, including a reasonable fee for his attorney.

2. Debtor could have stayed the issuance of the Writ of Possession by complying with Section 666–14. Or debtor

could have appealed the issuance. Debtor took neither of these actions. Therefore the issuance of the Writ of Possession on August 17, 1983 terminated the landlord-tenant relationship between LRK and Debtor under the May 5, 1981 Lease Agreement.

3. The fact that, subsequent to the issuance of the Writ of Possession, LRK permitted Debtor to remain on the premises does not alter the fact that there was no written lease in existence between LRK and Debtor.

5. Debtor's contention that LRK waived its right under the Writ of Possession by subsequently allowing Debtor to remain on the premises is without merit. LRK did not relinquish its rights under the Writ, but merely delayed enforcing its rights because of Debtor's promises and Debtor's claim that it had no place to relocate. LRK should not now be penalized for accommodating Debtor by granting a grace period to cure the arrearages.

6. In discussing waiver of a right, the Hawaii Supreme Court in *Robinson v. McWayne*, 35 Haw. 689 (1940) stated:

> [W]aiver is generally defined as "the intentional relinquishment of a known right", "a voluntary relinquishment of some rights" and "the relinquishment or refusal to use a right" (at page 719).

At page 724, the Court added:

> It is elementary that a waiver can take place only by the intention of the party, and such intention must be clearly made to appear.

7. In the instant case, as the testimony of Mr. Peiterson shows, there was not an intentional relinquishment of the right under the Writ of Possession but merely an intent to delay its execution based on Debtor's promise to cure the default. Thus, the Court finds no waiver.

■ **II.  Is LRK estopped from enforcing the Writ of Possession?**

8. The Court also finds no merit in Debtor's contention that LRK is estopped from enforcing the Writ because of its subsequent dealing with Debtor regarding the lease and rental arrangement. Debtor was not "misled" by LRK's actions. In fact, it was Debtor, not LRK, who did the misleading, by indicating it would pay not only the rents as they became due, but also the arrearages. To induce LRK to believe that the rents would be paid as promised, Debtor even gave LRK a check that was rejected by the bank for lack of funds.

9. In discussing estoppel, the Hawaii Supreme Court in *Molokai Ranch Ltd. v. Morris*, 36 Haw. 219, 223 (1942), held as follows:

> The rule of law is clear that where one by his words, or conduct, wilfully causes another to believe the existence of a certain state of things, and *induces him to act on that belief,* so as to alter his previous position, the former is precluded from averring against the latter a different state of things as existing at the same time. (Emphasis added.)

Thus, by definition, to claim estoppel, Debtor must show that there was a representation and reliance on such representation.

10. In the instant case, there was no representation concerning the Writ of Possession. In fact, Mr. Lionel Ribella, who testified on behalf of Debtor, stated that he was never advised by anyone about a Writ of Possession. Therefore, there having been no representation, there could not have been reliance thereon.

11. The elements of estoppel not having been established herein, LRK should not be estopped from enforcing the Writ.

■ **III.  Is there a new lease between the parties?**

12. Finally, the Court also finds no merit to Debtor's contention that, even though the written lease was extinguished by the issuance of the Writ, an unwritten lease between the parties was in existence at the date of the bankruptcy filing.

13. No evidence was introduced to show that LRK and Debtor had adopted the terms of the original lease in a new lease. The evidence shows only that LRK contin-

ued to charge Debtor rent as set forth in the May 1981 lease for occupancy of the premises following the issuance of the Writ of Possession. Without proper documentation of incorporation by reference, the continued payment of rent is not sufficient to revive the May 1981 lease. No such documentation was presented.

15. In fact, Mr. Ribellia who testified on behalf of Debtor, admitted that there was no agreement between LRK and Debtor concerning a new lease. He stated that the May 1981 lease was the only lease he was aware of and that there was no oral lease. (Transcripts of Proceedings held January 10, 1984, hereafter "TR" at 30, 31).

16. HRS § 656–1(4) provides that no action shall be brought upon a real property lease unless there is a written document signed by the party to be charged therewith, in this case, the Debtor. *Young v. McQuerrey,* 54 Haw. 433, 508 P.2d 1051 (1973), cited by debtor in support of his "new lease" theory does not support this contention. In *Young,* a memorandum in writing was signed by the party to be charged therewith. In the instant case, there has been no evidence presented as to a memorandum or note in writing signed by Debtor after the Writ was issued which could arguably constitute a written memorandum satisfying the provisions of HRS § 656–1(4).

## IV. Was the cancellation of the lease pursuant to the Writ of Possession a Fraudulent Conveyance?

17. In its Memorandum filed on January 23, 1984, Debtor for the first time contended that the termination of the lease which resulted from the issuance of the Writ of Possession was a fraudulent conveyance avoidable under Sec. 548 of the Bankruptcy Code and that as such the Writ of Possession should be set aside.

18. The Court requested and received on February 29, 1984 a supplemental memorandum from LRK in which it is per-

suasively argued with case precedent from the 9th Circuit that the transfer in question is not voidable as a fraudulent conveyance.[1]

19. This Court, however, does not find it necessary to reach that decision in resolving the instant motion to lift stay. Pursuant to Rule 7001 of the Bankruptcy Rules, an action to avoid transfers under Section 548 of the Bankruptcy Code must be an adversary proceeding. Rule 7003 of the Bankruptcy Rules, by incorporation of Rule 3 of the Federal Rules of Civil Procedure, directs that an adversary action be commenced by the filing of a complaint.

20. In the instant case, Debtor has not filed a complaint to set aside the Writ of Possession. Consequently, at this expedited hearing on LRK's motion to lift stay, this Court declines to consider the matter of setting aside the Writ of Possession as being a fraudulent conveyance under Sec. 548.

21. Based on the foregoing, the court finds that the Writ of Possession issued by the State District court prior to Debtor's bankruptcy had cancelled and annulled the lease between LRK and Debtor. Thus, at the time of the filing of the instant bankruptcy proceeding, there was no lease in existence and Debtor was at most a tenant at sufferance. Where there is no executory lease to assume, to permit Debtor to remain on the premises would be tantamount to the creation of a new lease agreement involuntarily imposed upon LRK. By instituting these proceedings for relief from the stay, LRK reinforced its desire not to revive a lease agreement with Debtor and requested relief from the stay. The Court finds it only proper that the stay be lifted and it so orders.

1. LRK cites the decision of the 9th Circuit Bankruptcy Appellate Panel, *In Re Madrid,* 21 B.R. 424 (Bkrtcy.B.A.P., 9th Cir., 1984), and a 9th Circuit District Court decision, *In Re Gilmore,* 31 B.R. 615 (D.C.E.D.Wash., 1983).