In re John BRICKER and Kathaleen Bricker, husband and wife, dba Basket House, Debtors.

DVM CO., a joint venture, limited partnership, Movant,

v.

John BRICKER and Kathaleen Bricker, husband and wife, dba Basket House, Respondents.

Bankruptcy No. B–83–3262–PHX–GBN. Adversary "A".

United States Bankruptcy Court, D. Arizona.

Oct. 12, 1984.

Redfield T. Baum, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for debtors.

Richard H. Lee, Murphy & Posner, Phoenix, Ariz., for movant.

## OPINION

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

Movant DVM Company leased space in Metrocenter Mall to the debtors-in-possession, John and Kathaleen Bricker, dba Basket House. The lease, in a use clause, set forth the items that could be sold, including "Arizona Souvenirs". Sales of items not in conformity with the lease's restrictions, without the landlord's prior written consent constituted a breach or default. *DVM Co. v. Bricker*, 137 Ariz. 589, 590, 672 P.2d 933, 934 (1983).

During the lease term, the Brickers commenced marketing T-shirts containing imprints of entertainment personalities and popular sayings. Contending this was a violation, movant filed a Maricopa County action for lease termination on November 11, 1978. A.R.S. § 33–361 A (1983 Supp.). The controversy moved through the state judicial system, culminating in an Arizona Supreme Court decision adverse to the Brickers. *DVM Co., supra.* Holding there had been no waiver of the breach created by sale of the offending T-shirts, the Supreme Court remanded to the trial court for entry of judgment for DVM, including possession of the premises.[1] *Supra*, 672 P.2d at 936. Debtors filed their voluntary petition on November 15, 1983.

---

1. While it was held error for the trial court to refuse introduction of certain evidence by the landlord, no further proceedings were deemed necessary as Arizona commercial lease breaches need not be material to justify termination. 672 P.2d, at 935–36.

**346**

Shortly thereafter, the landlord commenced an action for relief from the automatic stay and/or for adequate protection payments. 11 U.S.C. § 362(d). The matter is before me on the parties' cross-motions for summary judgment. Rule 7056, F.Bk.R.

■ While in some jurisdictions a lease is not terminated until issuance of a writ of possession, *In re Darwin*, 22 B.R. 259, 264–65 (Bankr.E.D.N.Y.1983), that is not the law in Arizona. A.R.S. § 33–361 A (1983 Supp.); *DVM Co., supra*, 672 P.2d, at 936; *Roosen v. Schaffer*, 127 Ariz. 346, 348, 621 P.2d 33, 35 (Ariz.App.1980). Debtors' lease was terminated at the time movant filed its § 33–361 complaint, the only remaining question being whether the termination would be found proper by the court. *Thomas v. Given*, 75 Ariz. 68, 69–70, 251 P.2d 887, 889 (1952) (lease forfeited when landlord (1) re-enters, or (2) commences recovery action). *See also* P. Baird, *A Study of Arizona Lease Terminations*, 9 Ariz.L.Rev. 187, 198–99 & n. 66.

It is unclear if the state trial court entered the writ for possession pursuant to the Supreme Court's explicit directions.

■ This is irrelevant in view of established Arizona law, imposing termination upon movant's filing of its ejectment case. *Thomas, supra*, 251 P.2d, at 889. If the writ for possession was not entered pre-petition, its entry, pursuant to the Supreme Court's mandate, is merely a ministerial duty. *Gusick v. Eyman*, 81 Ariz. 182, 184, 302 P.2d 944, 945 (1956); *Scates v. Arizona Corporation Commission*, 124 Ariz. 73, 75, 601 P.2d 1357, 1359 (Ariz.App.1979).

Assuming a valid termination, the question becomes (1) whether a bankruptcy court has the power to reinstate the lease, and, if so, (2) whether that power should be exercised here.

Since the Code's effective date, a string of decisions have announced there can be nothing for a debtor to assume or reject under § 365 should an executory contract be validly terminated. *See* cases cited in *Darwin*, 22 B.R., at 263. Often the decisions do not directly address whether equity allows the Bankruptcy Court to revive a terminated lease. Some doubt there is any such power. *Darwin, supra*, at 263; *Matter of Ruby's Florida, Inc.*, 11 B.R. 171, 174–75 (Bankr.M.D.Fla.1981). Others state if such power exists, it is to be exercised only as an "extraordinary remedy". *Matter of Mimi's of Atlanta*, 5 B.R. 623, 629 (Bankr.N.D.Ga.1980) (declining to exercise power, if it exists).

Debtors have cited authority for their argument a court may resurrect a lease that was validly terminated pre-petition. These cases are doubtful precedent for that proposition.

*Finn v. Meighan*, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945), stands for the proposition bankruptcy *ipso facto* lease clauses are enforceable under the prior Act, but are construed liberally in favor of a bankrupt.[2] No discussion of resurrection or revival of a terminated lease can be discerned in that decision. *Smith v. Hoboken RR, Warehouse & SS Connecting Co., et al.*, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946), spawned an exception to enforceability of such clauses where there is (1) a strong public interest, and (2) lease forfeiture would totally frustrate reorganization. *See Matter of Triangle Laboratories*, 663 F.2d 463, 468–70 (3d Cir.1981).

Later cases dealing with the enforceability of bankruptcy clauses may well be distinguishable factually, including, *inter alia*, a judicial desire to avoid a windfall when the defaulting tenant has constructed substantial property improvements. *Triangle Laboratories*, 663 F.2d, at 468–71;[3]

**2.** *Ipso facto* or bankruptcy clauses under the prior Bankruptcy Act would terminate a contract or lease in the event of bankruptcy. Because they hamper rehabilitation efforts, they have been rendered unenforceable by the Code. House Rep. No. 95–595, 95th Cong., 1st Sess. 348 (1977); Senate Rep. No. 95–989, 95th Cong.,

2d Sess. 59 (1978). Reprinted, respectively, in 1978 *U.S. Code, Cong. & Admin. News*, 5787, at 5845, 6304.

**3.** *Triangle's* essential holding is that a validly terminated lease is not resurrected by the filing of a bankruptcy petition. The case was remand-

*In re Huntington Ltd.,* 654 F.2d 578, 583–86 (9th Cir.1981) (bankruptcy clause not enforced under equitable discretion since majority of $3.6 million property value ascribed to tenant improvements); *Weaver v. Hutson,* 459 F.2d 741 (4th Cir.1972) (land worth $150,000 subsequently improved by tenant's $2 million investment, landlord's financial interests not in jeopardy, acceptance of post-accruing rents is waiver of lease violation under state law); *In re Fleetwood Motel Corp.,* 335 F.2d 857 (3d Cir.1964) *(ipso facto* clause not enforced under inherent equity powers due to public investment in leasehold of over $1/2 million in improvements).

To the extent these cases evidence a judicial effort to avoid a harsh result stemming from a lease's *ipso facto* clause, they are now distinguishable due to enactment of the Code's prohibition on enforcement of such clauses. 11 U.S.C. § 365(e)(1). They are additionally distinguishable by an apparent lack of a windfall to the landlord here. In contrast to the construction of multi-million dollar property improvements to vacant land, the instant case concerns leasing of space in a shopping mall and a subsequent judicial finding of debtors' breach. Special consideration is given to shopping center lease provisions, including assurance a use or exclusivity restriction will not be substantially breached[4] by the debtor-in-possession's assumption. 11 U.S.C. § 365(b)(3)(C). The Arizona court recognized the importance of the use restrictions to the landlord in its ruling on the excluded evidence. 672 P.2d, at 935–36.

Recent termination cases decided under the Code hold no assumption can be made of a validly terminated lease. *Moody v.*

*Amoco Oil Co.,* 734 F.2d 1200, at 1212, 1214 (7th Cir.1984) (filing of a Chapter 11 petition cannot resuscitate rights under a contract validly terminated pre-petition)[5]; *In re Fidelity American Mortgage Co.,* 19 B.R. 568, 573–74 (Bankr.E.D.Pa.1982) (where debtor has lost all interest in property prior to filing, courts should not rely on equitable considerations to revive the interests). *See also* cases cited 19 B.R., at 574 & n. 46. This principle has been codified into substantive law as to nonresidential realty in future cases by the Bankruptcy Amendments and Federal Judgeship Act of 1984. H.R. 5174, 130 Cong.Rec., at H 7480 (daily ed. June 29, 1984).

*In re Chuck Wagon Bar-B-Que,* 7 B.R. 92, 95 (Bankr.D.D.C.1980), observed:

There clearly must come a point in time when the parties to a lease are entitled to legitimate expectation of finality in connection with their business dealings. It is clearly inequitable to permit a debtor to attempt to cure and remedy a contractual obligation that has already expired. To permit a debtor to assert rights under an already expired lease by resort to the equitable provisions of the Bankruptcy Code would undermine confidence not only in the certitude of contracts, but in the judicial system itself. Such a result was clearly not envisioned by the framers of Section 365. That section itself clearly relates to and refers to "an unexpired lease of the debtor;" and it clearly envisions that there be an on-going relationship between the landlord and tenant over which the court can properly exercise its jurisdiction.

ed as there was no specific finding whether the landlord had validly terminated the tenancy. 663 F.2d, at 471.

4. Apparently feeling this provision has been misapplied to deprive shopping centers of use restriction protections, Congress deleted the word "substantially" from § 365(b)(3)(C) in the Bankruptcy Amendments and Federal Judgeship Act of 1984. H.R. 5174, Title III, Subtitle C. 130 Cong.Rec. H 7480 (June 29, 1984). Thus, strict adherence to use restrictions is mandated for future cases.

5. *Moody* relied in part on cases also cited here by the debtor. *In re Fontainbleau Hotel Corp.,* 515 F.2d 913 (5th Cir.1975); *In re Triangle Laboratories, supra.* Both Pre-Code cases involve questions whether the leases were validly terminated pre-petition. 515 F.2d, at 914 (no right to possession under Louisiana law without court judgment). 663 F.2d, at 471 (no specific finding by trial court whether lease had been validly terminated pre-petition).

*See also In re Fidelity American Mortgage Co.,* 19 B.R., at 574.

 Accepting debtors' contention this particular lease is vital to an effective reorganization, their argument still fails. The lease was validly terminated prior to filing of debtors' petition. I do not have the power to resurrect this contract. If I do, this is not the appropriate case in which to exercise that equitable power.

■ All that is left is to determine if an Arizona court in identical circumstances would hear any additional equitable defenses by the tenant. *Thomas, supra,* 251 P.2d, at 889–90; *P. Baird,* 9 Ariz.L.Rev., at 191. Allegations of the landlord's waiver could have been raised and considered in the state proceedings. *Cottonwood Plaza Associates v. Nordale,* 132 Ariz. 228, 232–33, 644 P.2d 1314, 1318–19 (Ariz.App.1982) (forcible detainer action). Accordingly, all such prior defenses are foreclosed by *res judicata. Cases Grande Trust Co. v. Superior Court,* 8 Ariz.App. 163, 165, 444 P.2d 521, 523 (1968).

■ However, debtors have alleged by affidavit movant's employees made post-judgment statements that their primary concern in the dispute was to establish the validity of the use restriction and not termination of the leasehold. Supplemental Affidavit of John Bricker, at 3, Docket No. A–17. This factual allegation has been controverted. Affidavit of Larry Z. Moss, at 2, Docket No. A–21. Conflicting evidence cannot be resolved at the summary judgment stage. *Warrior Tombigbee Transportation Co. v. M/V Nan Fung,* 695 F.2d 1294, 1298–1300 (11th Cir.1983).

Debtors may contest whether there has been a post-judgment estoppel or waiver by the landlord of its rights to possession. *In re Mechanical Unlimited,* 38 B.R. 818, 819–21 (Bankr.D.Hawaii 1984). An evidentiary hearing will be set limited solely to the issue whether movant engaged in any representations after conclusion of the state trial which would effect an estoppel or waiver of its rights. In all other respects, movants' motion for summary judg-

ment is granted and debtors' motion is denied.

ORDERED ACCORDINGLY.